## BEHR *v.* CONNECTICUT MUT. LIFE INS. Co.

*(Circuit Court, W. D. Tennessee.* ———, 1880.)

1. NEW TRIAL—CHARGE OF THE COURT—WEIGHT OF TESTIMONY.—The court may comment on the facts, but, in doing so, should be careful not to assume to decide the matter of fact itself, nor to take from the jury the right of weighing the evidence and determining its force and effect to prove the entire issue. Therefore, an instruction which, in seeking to explain the meaning of certain words or phrases, overlooks or ignores all the proof offered by the other side, and calls the attention of the jury only to the strong features in the party's own favor, was properly refused as a charge upon the weight of testimony, and a new trial should not be granted for such refusal

2. EVIDENCE—ESTOPPEL BY A SWORN STATEMENT—RULE STATED.—It is misleading a jury to call the rule of public policy which concludes a party from contradicting her oath deliberately made, in the course of judicial proceedings, an *estoppel.* It is an established rule of evidence in Tennessee that such an oath, made with *a wilful intention to swear falsely,* cannot be contradicted; but it does not operate as an *estoppel* unless the opposite party has acted upon it, or been prejudiced by it, in which case it cannot be contradicted at all, however innocently made. Where, however, it does not assume the character of a technical estoppel, the jury may find the truth from the proof at large, if the party shows satisfactorily that the oath was not made with the intention to swear falsely.

Motion for New Trial.

The plaintiff having sued the defendent company on a policy of life insurance, and procured a verdict and judgment for $2,881, the defendant moved for a new trial. The defence was that at the time the policy issued the life assured, contrary to the warranty in the policy and application, was addicted to the use of spirituous liquors; that after it issued he acquired the habit of intemperance so as to impair his health or produce *delirium tremens,* and that he committed suicide by drowning. Prior to the death of her husband the plaintiff filed in the proper state court a petition for divorce, on the ground of habitual drunkenness, in which she stated that her husband had been for *four years* an habitual drunkard and for *two years* subject to *mania a potu.* This petition, being sworn to, was introduced in evidence by the defendant company against the plaintiff, and, if true, conclusively established that he was a

drunkard at the time the policy issued, and had subsequently had *mania a potu,* which, it was proved, is synonymous with *delirium tremens.* Being introduced as a witness on this trial, she swore that the facts stated in the petition for divorce were not true, and that her husband had never acquired habits of intemperance until after the policy was issued; and much proof was introduced on both sides tending, in behalf of the plaintiff, to corroborate her present statement, and, in behalf of the defendant, that made in the petition for divorce. In attempted explanation she introduced proof of her being a foreigner, born and educated in France, and having an imperfect knowledge of our language; that she was in great distress mentally; was rendered, both herself and children, wretched by the habits and conduct of her husband, as well as being reduced to want and suffering. She swore that it was a *mistake* she made in telling her lawyer that her husband had been so long a drunkard; that the lawyer wrote the petition, and she swore to it without knowing the force and effect of the words used, or detecting the mistake.

The lawyer swore that the husband was his own relative; that he and other friends advised the application for divorce, and was told by her that the facts were as stated in the petition, except that, having seen the ravings of the husband, he himself named it *mania a potu,* and thought it was such. He further said that the language of the petition was his own, but that he read it over to her and she swore to it. He also testified that of his own knowledge the husband was a temperate man in 1869, when the policy issued, and it did not occur to him, at the time he wrote the petition for divorce, that the fact of his being a drunkard as far back as the petition stated was not true. There was much other testimony *pro* and *con* upon this and all the issues made by the pleadings, but it is sufficiently stated above to indicate the points made upon this motion for a new trial.

Among other things the court charged the jury as follows: "If you believe the facts stated in the petition for divorce to be true, it is an end of this case and the plaintiff cannot recover. It proves, if true, conclusively, that the life assured

was addicted to habits of intemperance at the time the policy was issued, and that he subsequently had *delirium tremens.* But if you find there is evidence tending to show that the facts stated in that petition are not true, or only partially true, the question then arises, what force and effect shall you give to the petition? It is contended by the defendant company that Mrs. Behr, the plaintiff here, cannot gainsay it; that she is estopped to deny it, whether true or false. There is, undoubtedly, a principle of law which holds one to his oath, whether it be true or false, very rigidly under certain circumstances. If one swear falsely to a state of facts, and you act on it, so that if he be allowed to deny it you are prejudiced, it is an estoppel, and he will not, under any circumstances, be allowed to deny it, no matter how innocent he be. But there is no evidence in this case that the defendant company has in any way been prejudiced by this oath of Mrs. Behr to the petition. The company has not acted on it, nor suffered by it, and I do not think the rule of estoppel applies to it for that reason.

"But there is a further principle of law to be considered, which may apply, and it is for you to determine how the fact is in this case. It is a rule of public policy that if one wilfully and deliberately swears falsely, whether anybody acts on it or not, or is prejudiced or not, he cannot be heard in a court of justice to swear to the contrary when his interest demands that he shall change his oath. But if he has inadvertently or mistakenly sworn to a state of facts which he now says is not true, and he proves to your satisfaction that he is innocent of the offence of intentional false swearing, you may look to the proof at large and say how the facts really are. If, therefore, you find from the facts in this case that Mrs. Behr has explained satisfactorily to you how she came to make an oath which she now says is not true, and you are of opinion that she is innocent of making a wilfully and deliberately false oath to obtain a divorce, then, and only then, will you be allowed to look at the other proof in the case. That is the first question for you to determine. If you find it against her she cannot recover.

"But, assuming that you have determined that question in

her favor, then you may look to all the proof, including her admissions in that petition, and say how the truth is. Admissions under oath, made with a knowledge of the facts, are the very highest order of testimony and deserve great weight at your hands. You are to look to the admissions in the light of the surrounding circumstances; to her condition mentally; to the nature and character of her means of information; to the fact that the document is a legal proceeding, drawn by a lawyer and read over to her by him; to the extent of her understanding of the language used; to the object and character of the petition itself, and to every fact and circumstance found in the proof adding strength to or detracting from the sworn statement, and say what weight you will give to it under all the circumstances. Having thus weighed the admission, you will in the same way look to the other proof in the case, weigh it in the same manner, and say whether the facts be as the plaintiff now claims them to be, or as the defendant says they are. If you find that Behr, the deceased, was, at the time he took out the policy, addicted to the use of ardent spirits, the plaintiff cannot recover; or, if you find that he subsequently acquired the habit of intemperance, so as to impair his health or produce *delirium tremens*, she cannot recover."

The court also refused to give the following charges asked by the defendant company, viz.:

"Ordinarily, a party having made a sworn statement of facts in the course of a judicial proceeding, (as, for instance, such a statement as is made in the petition for divorce filed by Mrs. Behr, and given in evidence in this case,) is absolutely bound by such statement, and estopped from showing that such statement was not true. This doctrine has its foundation in the obligation under which every person is placed to speak and act according to the truth, and in the policy of the law to suppress the mischiefs that would arise if men were permitted to deny that which, by their solemn and deliberate acts, they have declared to be true. The conclusive effect of such statements can only be obviated by clear proof that they were made inconsiderately or by mistake.

"If the statements were made *deliberately,* as if the facts were communicated to counsel with a view to be incorporated in a petition for a divorce, and that the petition, after being prepared, was read over to the party by her counsel, and then adopted and sworn to, they cannot be said to have been made *inconsiderately.* If the facts were peculiarly within the personal knowledge of the party making the statements, and if she was not ignorant in regard to the truth or falsehood of the facts, then the sworn statements cannot be said to have been made by *mistake.* A mistake, to have the effect of removing the estoppel, must, at all events, be an *innocent* and *excusable* mistake—arising from imperfect knowledge or information. If the party knows the facts and misstates them, the estoppel concluded her from showing that her statement was untrue. It is not sufficient to prove that the sworn statement was untrue. There must be some satisfactory reason shown why the truth was not stated in the first instance, and the reason shown must be sufficient to establish the fact that the misstatement was innocently made, under excusable ignorance of the actual facts."

*Humes & Poston,* for plaintiff.

*Estes & Ellett,* for defendant.

HAMMOND, D. J. The errors assigned on this motion are that the idea of *estoppel* was carefully excluded from the jury; that the conclusiveness of the sworn statement was made to depend wholly upon whether or not the plaintiff had been guilty of the offence of wilful and deliberate false swearing, and the court refused to explain, as asked by the instruction, what is meant by "inconsiderately" and "by mistake" making a false statement. It seems to me that so much of the instruction as sought to explain the meaning of the words "*deliberately,*" "*inadvertently,*" and "by mistake" is asking the court to take from the jury certain questions of fact in the case, and to determine them as a matter of law. It is certainly charging the jury upon the weight of the testimony, and expressing an opinion by the court that, under the circumstances stated in the instruction, the sworn statement was amde deliberately, and not inconsiderately and by mis-

take. The court may comment on the facts to aid the jury in reaching a just conclusion, but should be careful, in doing so, not to assume to decide the matter of fact itself.. *Farmers' Bank* v. *Harris*, 2 Humph. 311; *Burdell* v. *Denig*, 92 U. S. 716; *Life Ins. Co.* v. *Baker*, 94 U. S. 610.

The charge refused overlooks the proof for the plaintiff, and, calling the attention of the jury to the strong features in the defendant's favor, asks the court to say to the jury that there was deliberation in making the statement, and no inadvertence or mistake. It is not competent for the court, where there is evidence tending to prove the entire issue, although it is conflicting, to give an instruction which shall take from the jury the right of weighing the evidence and determining its force and effect. *Weightman* v. *Washington City*, 1 Black, 39, 49; *Greenleaf* v. *Birth*, 9 Pet. 292; *Crane* v. *Morris*, 6 Pet. 598, at p. 617; *Lucas* v. *Brooks*, 18 Wall. 436.

It is very difficult in some cases to determine whether an instruction is on the facts or the law of a case, and its correctness must depend on the phraseology used; but where the jury is instructed as to what their verdict shall be on the particular point, it is a direction on the effect that they shall give to the evidence. *Tracey* v. *Swartout*, 10 Pet. 80.

A careful reconsideration of this charge strengthens the conviction I entertained at the time it was refused, that it is a partial statement of the facts, accompanied with an expression of opinion by the court as to the effect of those particular facts upon the general fact in dispute—namely, whether Mrs. Behr made her statement under oath deliberately, and without inadvertence or mistake. The charge was therefore properly refused.

The other errors assigned proceed upon the theory that the petition for divorce was an estoppel, and the court erred in not saying so to the jury. Undoubtedly the supreme court of Tennessee, in *Hamilton* v. *Zimmerman*, 5 Sneed, 40, 47, calls the principle which concludes a party by his sworn statement erroneously, I think, when applied to a case like this, an *estoppel;* and the subsequent cases, following the language of that case, continue to call it so. *Cooley* v. *Steele*, 2 Head,

605, 608; *Tipton* v. *Powell*, 2 Cald. 19, 23; *McCoy* v. *Pearce*, Thomp. Cas. 145, 148; *Seay* v. *Ferguson*, 1 Tenn. Ch. 287; *Ament* v. *Brennan*, Id. 431; *Nelson* v. *Claybrook*, (Jackson, 1880,) MSS. not yet reported.

But all these cases show that it is not an *estoppel,* because, with one accord, they say that, "if made inconsiderately or by mistake, the party ought certainly to be relieved from the consequences of his error." Now, the distinguishing feature of an *estoppel* is that under no circumstances can it be averred against; it is not susceptible of explanation and often speaks against the truth, and for this reason has been regarded as odious. It was given that name "because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth." Bigelow, Estop. 44. Such a sworn admission may become an estoppel, as it may, whether sworn to or not, if parties act on it, or would be prejudiced by it; and, perhaps, in cases where no explanation can be given, and the party is caught in deliberately attempting to cross himself in swearing two contrary ways about the same fact, it may, in one sense, be called an *estoppel* to hold him to his first oath and not permit him to gainsay it. But this very case shows that it is misleading to call it so, and because it has been done we are now asked to predicate more upon the name given than is justified by the cases so much relied on, and to extend the principle settled by them far beyond what the supreme court ever intended.

It would make a most odious estoppel to forever hold a party to a falsehood, whether any one has been injured by it or not. After all, it is only a question of the force and effect of the petition for divorce as a part of the proof, and when once it is admitted that, under any circumstances, the contrary can be shown, it cannot be called an *estoppel;* and it seems to me to be giving the adverse party an unfair advantage to call it so, and likely to mislead the jury to the detriment of one who may be innocent of false swearing. In deference to these cases, which have established a rule of evidence binding on this court, as well as all others in Tennessee, I charged the jury that the plaintiff here was bound

by her oath unless she could show, to the satisfaction of the jury, that she had not wilfully made a false oath in the first instance. This is all that the cases cited mean, in my opinion, and all else that is claimed for them is based upon an inference drawn from the use of the word "estoppel." I have found none, and doubt if any cases elsewhere will support the doctrine that a man is ever bound by a false oath so that he cannot show the truth as between himself and others who are strangers, and have been neither injured nor prejudiced by the original falsehood.

The general rule elsewhere is not in accordance with the Tennessee cases. 1 Greenl. Ev. §§ 210–212. But in the charge I gave to the jury I have followed the cases strictly in all except calling the principle enunciated an estoppel. It is immaterial by which name it is called, perhaps, but more was sought to be implied from the word than the cases themselves justified, and it seemed to me necessary to discard it as misleading. In view of what was actually said to the jury on the subject, it seems to me that no error was committed of which the defendant can complain.

The fact that the jury were told that they could not look to the proof at large unless they acquitted the plaintiff of any intentional and wilful false swearing, it is argued, called for a trial as if upon an indictment for perjury, and the jury were led to believe that they would, by finding against her, substantially fasten upon her the odium of perjury or false swearing, and were thereby led to prejudice the defendant's case by giving more effect to the plaintiff's proof than they should have done, and less to that of the defendant than they would have done if they had been told that they must simply determine whether she had made the oath deliberately and with full knowledge of the facts, or under circumstances showing that she made it inadvertently or by mistake.

There is much force in this objection to the charge, and it illustrates the inconvenience of applying the analogy of estoppel to the mere process of weighing testimony. The cases cited all show that there is a preliminary question to be tried, namely, whether there was an innocent mistake made. It is

to be determined whether the party shall, in obedience to public policy, be precluded from contradicting his original oath. He is not to be so precluded unless he has, deliberately and with full knowledge, taken the oath without inadvertence or mistake on his part. If he has done this he cannot contradict or offer proof of others to contradict it. It is in the nature of a penalty, and a very serious one, for false swearing. It seems to me plain that it is proper to say to the jury that, in trying this question, they must find a wilful and deliberate false swearing to justify them in inflicting it. Nothing less should work the serious consequence of closing the plaintiff's mouth, so that, although her husband had been, in fact, a drunkard for only a year, for example, she must stand by her false statement that he had been such for four years, and thereby lose a policy to which there is no defence if she could show the truth.

The charge given is a necessary result of the doctrine invoked, and the law of these cases, in my opinion, requires that this *conclusiveness* of the false oath shall not obtain unless the public policy against false swearing requires it. I sought to avoid the effect complained of in the charge, by telling the jury that after they had determined the preliminary question in favor of the plaintiff, they would *then* look at the admission under oath as an admission of great weight, and determine the force and effect of it in behalf of the defendant. The charge is very favorable to the defendant in that respect, and I think the jury understood that after they had tried the question of wilful false swearing, they should give the petition for divorce the fullest weight it was entitled to as an admission by her going to prove the defendant's case. I have no doubt from the proof that the plaintiff did make a mistake in swearing that her husband had been a drunkard four years, and think it is fairly proved that he was a temperate man when he took out the policy. The proof is not so clear as to the extent of his subsequent habits, but the jury has found that they did not impair his health or produce *delirium tremens*, and I am satisfied with the finding, as also upon the issue of suicide.

It is plain, therefore, that in this case the plaintiff, in her petition for divorce, made statements which were not true, yet would defeat her recovery on this policy.   It not is difficult to apply the rule of public policy, call it an *estoppel* if you will, to a case where the principle of protecting the courts against false swearing is called for by the facts developed; but, on the other hand, when the proof tends to show an unfortunate misstatement of the facts, it becomes a matter of serious concern to so direct the jury that they shall not hold the party to the misstatement without a clear case which calls for such punishment.   On the whole, I am satisfied with the verdict, and overrule the motion for a new trial.