HELFER *v.* MUTUAL BENEFIT HEALTH & ACCIDENT ASS'N.

(*Knoxville*, September Term, 1936.)

Opinion filed October 17, 1936.

GUINN, MITCHELL & ERWIN, of Johnson City, for plaintiff in error.

Allen, Nelson & Allen, of Elizabethton, and Ray H. Jenkins, of Knoxville, for defendant in error.

Mr. Special Justice Davis delivered the opinion of the Court.

Plaintiff, Helfer, sued to recover total and permanent disability insured against through a policy issued to him by the defendant. Under this policy, if there is liability, the plaintiff is entitled to disability benefits of $100 per month. Plaintiff was induced to apply for such accident insurance through defendant's agent, and applied for his first policy on November 12, 1929. That policy was issued, and provided a monthly benefit of $50 for total and permanent disability. Later, and on November 16, 1931, the plaintiff was induced to increase his protection by accepting a policy which would pay him $100 per month for total and permanent disability, and he accepted such additional insurance, and the first policy issued to him was surrendered to defendant, and the new policy, carrying, of course, an increase premium, was issued to the plaintiff.

Plaintiff was an employee of the American Bemberg Corporation, at Elizabethton. While at his work, on or about November 27, 1932, a bale of cotton fell from the top of a pile some ten feet or more in height, struck plaintiff in the back, and seriously injured him. He was in a hospital for several weeks, and the first nine days immediately following the injury could not turn in bed, and there is material proof that as the sole result of this accidental injury plaintiff is totally and permanently disabled.

In his application for the policy which was issued in

1929 the plaintiff made answers to questions propounded to him, and when the amount of coverage was increased in 1931, the application attached to the 1929 policy was simply copied. The plaintiff is able to sign his name, and did sign the applications, but he cannot read and write, and the agent filled in the answers to the questions in the application.

The defendant insists that plaintiff cannot recover because of false and fraudulent answers given to the questions in his application. In question 11, plaintiff was asked if he was sound physically and mentally, and answered, "Yes." He was asked if he had ever had hernia, and answered, "Yes." Under question 12, plaintiff was asked if he had ever had rheumatism, epilepsy, diabetes, heart disease, tuberculosis, or any disease of the brain or nervous system, to each of which questions he answered, "No." Under question 13, he was asked if he had received medical or surgical advice or treatment, or had any local or constitutional disease within the past five years, and answered, "No." Under question 14, the applicant disclosed that he had been operated on by a physician or surgeon in 1903, for right hernia, and stated the result as cured.

The defendant pleads that as a matter of fact, when the applications were made, plaintiff was not sound; that he was maimed and deformed in that he had both a right and left hernia, had theretofore had rheumatism and heart disease; had had medical or surgical advice or treatment for a constitutional disease within five years of the application; that the operation for right hernia had given only temporary relief, and that plaintiff was suffering from both a right and left hernia.

The trial court, at the close of all the evidence, sustained a motion for a directed verdict in favor of the defendant. In doing so, the court stated that the proof shows that plaintiff is totally and permanently disabled as a result of the accident received at the Bemberg plant, or at least that the proof was sufficient to go to the jury on these questions, and stated that he sustained the motion on the sole ground of misrepresentations in the application, which representations the court thought materially affected and increased the risk of loss. When asked what particular representations the court thought increased the risk, the court said the misrepresentations with reference to hernia, rheumatism, not having any local or constitutional disease within five years, and the statement that the applicant was sound physically.

It will be recalled that the application disclosed an operation for hernia in 1903.

The Court of Appeals affirmed the trial court. The affirmance is based solely on the ground of judicial estoppel. The only question to be determined is whether, by reason of certain affidavits which plaintiff made and filed with the United States Pension Bureau, in which plaintiff represented that he suffered from certain disabilities, he is now estopped to assert otherwise, and cannot be permitted to show the facts to be contrary to those stated in his affidavits made in an effort to secure an increase in his pension.

The plaintiff was formerly a soldier in the United States Army; he enlisted in 1903, went to the Philippine Islands, and was discharged in 1906. Following his discharge, he was allowed a small pension for right hernia and malarial fever, and since the allowance of such pen-

sion he has made repeated efforts to get an increase of his allowance.

On July 28, 1906, Helfer made an affidavit that he had not recovered from the hernia operation in 1903, and was compelled to wear a truss, and that he had not recovered from the malarial fever, but still has chills; on June 28, 1906, he made an affidavit to the effect that the wound from his operation was weak and tender, and that he was unable to do any work; on December 11, 1906, he made an affidavit to the same general effect; on August 6, 1910, he made an affidavit that his hernia was then protruding, resulting in other disorders, and kidney and liver trouble, resulting from malarial poisoning; on October 2, 1911, he made an affidavit that he suffered from a disease of the rectum, which he claimed resulted from malarial poisoning; on September 23, 1914, he made another affidavit as to hernia, malarial poisoning, and disease of the rectum; on June 1, 1916, he made a similar affidavit; on January 13, 1921, he made an affidavit that he suffered from nervousness, in addition to the hernia and malarial poisoning; on June 19, 1923, he made an affidavit that as a result of malarial poisoning and the hernia operation he had a nervous breakdown of the bowels and rectum and a kidney disease, and was unable to do any manual labor; on March 15, 1924, he made an affidavit that he had grown worse from the malarial poisoning and right hernia; on May 9, 1924, he made a similar affidavit; on January 27, 1925, he made an affidavit that he suffered from right hernia, malarial poisoning, and result of nerves; on April 24, 1925, he made an affidavit that he was disabled from a right hernia, results of operation for same, malarial poisoning, liver, kidney, rectum, chills,

and nervousness; on July 23, 1925, he made an affidavit to the same complaint, and of gall bladder, and rheumatism; on February 12, 1927, he made an affidavit as to disabilities from all of said diseases; on December 15, 1930, he made an affidavit of disability from malarial poisoning, hernia, rheumatism, nervousness, and stomach trouble; while on January 22, 1931, he made an affidavit that from the deadened nerves in his teeth he became nervous and had rheumatism.

All these affidavits were forwarded to the Pension Commissioner, in an effort upon the part of plaintiff to get an increase in the amount of his pension. He also furnished and forwarded to the Pension Commissioner the affidavits of various physicians tending to sustain his claim to the various disabilities named in said affidavits.

There is proof in the record that at the time plaintiff made his application for this insurance he was in fact physically sound, and was not disabled from any of the diseases mentioned in his affidavits made before the Pension Commissioner. The result is that the plaintiff is entitled to have the jury pass upon his case, unless he is cut off from such right by reason of his activities in behalf of his pension. The trial court and the Court of Appeals took this view, and held that he was judicially estopped and could not be heard to show the true facts.

There is no question that the premiums were paid by the plaintiff on his policy; and there is no proof that if plaintiff had rheumatism or other disease, such affliction contributed in any way to the injury which he actually suffered.

Can the defendant take advantage, under these facts, when plaintiff has suffered an injury disconnected with

any disease which his affidavits to the Pension Commissioner stated he had, and which there is material proof to show that he did not in fact have? Is judicial estoppel applicable in the case, so as to cut off plaintiff from a right he otherwise has?

Plaintiff explained the making of these affidavits on the general ground that doctors on the local pension board told him that he had these things, and they advised him to seek an increase in his pension; that all the soldiers were doing the same thing; and he says that he did not intend to state, of his own knowledge, the actual existence of the troubles named, but understood that he was simply saying that was what the doctors told him.

The difference between judicial estoppel and equitable estoppel is clearly pointed out in *Sartain* v. *Dixie Coal & Iron Co.*, 150 Tenn., 633, 266 S. W., 313. It is there said that judicial estoppel may be termed estoppel by oath. It is also pointed out that judicial estoppel indicates the class of estoppel arising from sworn statements made in the course of judicial proceedings, and it is shown that where the oath relied upon as a judicial estoppel was made inconsiderately, an explanation of the previous sworn statement may be made. The case also points out that judicial estoppel ordinarily applies to one who has made oath to a statement of facts in a former judicial proceeding, which in a later proceeding he undertakes to correct, and it is pointed out that, as a broad proposition, one who takes a particular position deliberately, in a course of litigation, without mistake induced by the opposite party, must act consistently with the position taken. In this, and in all other cases which we have been able to find, the doctrine of judicial estoppel has been

made to apply only to oaths or positions taken in judicial proceedings. It seems to apply to oaths taken in litigation, though not limited to litigation between the immediate parties.

The affidavits made by the plaintiff, and filed with the Pension Commissioner, are purely *ex parte*. The defendant had no connection with the matter. The affidavits were made for the sole purpose of getting an increase in pension for the plaintiff, or getting an examination as to his true physical condition. There was no litigation. In seeking such pension, or an increase therein, and in making the affidavits touching the same, the plaintiff was not pursuing an absolute right. He could not go into court and by litigation force the recognition of the rights claimed through the affidavits—a pension increase. It was not a judicial proceeding. As said in *Re McLean* (D. C.), 37 F., 648: "The pension bureau is not a court, nor can any officer thereof be vested with judicial functions." And in *United States* v. *Lalone* (C. C.), 44 F., 475, the court says that the commissioner of pensions is not a judicial officer.

In *Behr* v. *Connecticut Mutual Life Insurance Co.* (C. C.), 4 F., 357, a widow sued to recover under a life insurance policy issued on the life of her husband; prior to his death, she had sued him for divorce, and in her sworn bill, charged that her husband had been an habitual drunkard for four years, which fact, if true, made him an habitual drunkard on the date the policy issued, and would have avoided the policy. It was sought to raise an estoppel against the widow, because of her oath to and charges in her divorce bill. There was proof, however, that such oath was made inadvertently, inconsiderately,

and by mistake; it was held that the insurance company was not prejudiced by such oath, and a recovery was granted the widow. The court points out that it would make an odious estoppel to hold one forever bound by a falsehood, whether anyone was injured by it or not.

These principles we think applicable to the case at bar. The defendant has not been prejudiced by the affidavits submitted by plaintiff, touching his pension. This being true, it would be an odious estoppel to hold him forever bound thereby.

It results that the judgment of the Court of Appeals will be reversed, and the cause remanded for a new trial. Costs of the appeal will be paid by the defendant insurance company.