Thomas Diaz MOORMAN, Appellant,

v.

J. R. HUNNICUTT, Administrator et al., Appellees.

No. 10595.

Court of Civil Appeals of Texas.

Austin.

May 27, 1959.

Rehearing Denied July 1, 1959.

See also 290 S.W.2d 278.

R. C. Wilson, Douglass D. Hearne, Cofer & Cofer, of Austin, for appellants heirs at law of Helen Mar Hunnicutt et al.

Henry Lee Taylor, of San Antonio, for appellants Agatha Gates et al.

Yarborough & Yarborough, Tom H. Davis, E. Wayne Thode, of Austin, for appellee J. R. Hunnicutt, Administrator.

Judge Carey Leggett, of Port Lavaca, for appellees certain collateral heirs of H.. P. Hunnicutt.

Herman Jones and Jones, Herring & Jones, of Austin, for appellees collateral heirs of Bertha Hunnicutt.

Jack Cook, of Austin, for appellees unknown heirs of H. P. Hunnicutt and Bertha Hunnicutt.

GRAY, Justice.

This suit was brought by J. R. Hunnicutt, Administrator of the Estate of Helen Mar Hunnicutt, Deceased, to determine the right of succession to property possessed by her at the time of her death.

The first and principal question presented is: Was Helen Mar Hunnicutt the adopted daughter of Hicklin P. Hunnicutt and his.

wife, Bertha Hunnicutt, both deceased? These parties died without issue of their marriage and by their separate wills each devised property to Helen Mar Hunnicutt, who also possessed property in her own right.

Helen Mar died March 13, 1954 intestate, unmarried and without issue. At the time of her death her estate consisted of three classes of property; that owned by her in her own right; that acquired by will from Bertha Hunnicutt, and that acquired by will from Hicklin P. Hunnicutt.

The parties to the suit and claimants of the property are: the kin of Helen Mar; the kin of Bertha, and the kin of Hicklin P.

This cause was first tried in the probate court of Travis County and at a nonjury trial it was decreed that Helen Mar was not the adopted daughter of Hicklin P. and Bertha Hunnicutt. It was further decreed that the property possessed by her at her death be, subject to the administration of her estate, distributed to her heirs at law, naming them. Other claims to the property were denied.

The cause was appealed to the district court and a nonjury trial was had. There it was stipulated:

"* * * that the following issue should be tried first and separate from the remainder of the issues presented in this heirship suit:

"'Was Helen Mar Hunnicutt the adopted daughter or for the purposes of this action is she to be considered as if she were the adopted daughter of Hicklin P. and Bertha M. Hunnicutt, by reason of an estoppel or by a validation of an attempted adoption under the validation provisions of Article 46b of the Revised Civil Statutes?'"

On this issue the trial court:

"* * * decreed that the blood kin of Helen Mar Hunnicutt were estopped to assert that she was not the adopted daughter of Hicklin P. and Bertha M. Hunnicutt; and the court further adjudged and decreed that the attempted adoption of Helen Mar Hunnicutt by Hicklin P. Hunnicutt and Bertha M. Hunnicutt was validated under the provisions of Article 46(b) * * *"

It was then decreed that the property in question is to be distributed under Art. 2572, Vernon's Ann.Civ.St. and the trial court proceeded to make distribution to the claimants.

We will first notice the issue of adoption.

Helen Mar Hunnicutt (Theodora Brown) was born in Cuba August 22, 1902, the daughter of Frank Brown and his wife Sylvia Diaz Brown. The mother died in 1908. Sometime thereafter but before 1914 Theodora Brown came to the United States to live with Hicklin P. and Bertha Hunnicutt. Frank Brown's name was formerly Enos Moorman and he died in 1932. Bertha Hunnicutt was his sister. Except as quoted in the applications for change of name, for guardianship and the letter later quoted, there is no explanation in the record for Theodora Brown coming to live with the Hunnicutts.

It appears that Enos Moorman, or Frank Brown, went to Cuba in 1898 with the United States Army and no question of the citizenship of Helen Mar Hunnicutt is presented.

Hicklin P. and Bertha Hunnicutt "as the next friends of Theodora Brown" filed their application for her name to be changed to Helen Mar Hunnicutt. This application recites:

"(1) That they have no positive knowledge of the existence or whereabouts of the parents of said Theodora Brown, but believe from secondary evidence that her mother is dead and that the person who represents himself to be and is supposed to be her father resides in a distant state.

"(2) That said supposed father has voluntarily given said Theodora Brown into the care and custody of your petitioners, and is willing that your petitioners be appointed guardians of her person and estate, and that said Theodora Brown is at present residing with them.

"(3) That said Theodora Brown is without parental care and attention and has no guardian of her person and estate.

"(4) That your petitioners desire to be appointed guardians of the person of said Theodora Brown at the October Term of the County Court of Travis County, Texas, it being their desire to assume the care, custody, maintenance and education of said Theodora Brown, she being a girl and a minor of the age of fourteen years; your petitioners being able to provide such care, maintenance and education; and said Theodora Brown being desirous that they be so appointed.

"(5) That both said Theodora Brown and your petitioners are desirous that her name be changed from Theodora Brown to Helen Marr Hunnicutt, under which latter name she is already more generally known, and such change being conducive to and in harmony with the relations into which your petioners and said Theodora Brown desire to enter."

The above application was granted September 18, 1916 by the district court of Travis County. On that day Hicklin P. and Bertha Hunnicutt filed their application in the county court of Travis County praying that they be appointed guardians of the person of Helen Mar Hunnicutt. This application recites:

"* * * that Helen Marr Hunnicutt is a girl and a minor of the age of fourteen years. That your applicants have not been able to obtain positive knowledge as to whether either or both of the parents of said minor are living or dead, nor where they may be located if living, but that your applicants believe from such secondary evidence as they have been able to obtain that the mother of said minor is dead; that her name was originally Theodora Brown; that the man who is supposed to be her father resides in a distant state; that said supposed father has voluntarily delivered said minor into the care and custody of your applicants and is willing that your applicants be guardians of her person and estate. That at the September Term, A.D.1916 of the District Court of Travis County, Texas, 26th Judicial District, the name of said minor was upon application of your petitioners and at the wish and desire of said minor changed to Helen Marr Hunnicutt, as will appear from the official records of said Court. That your applicants have not been able to learn of the existence of any other relatives of said minor who might be entrusted with the care, custody, maintenance and education of said minor. That said minor is now without parental care and has no guardian either of her person or estate. That your applicants are desirous of assuming the care, custody, maintenance, and education of said minor and for that purpose wish to be vested with proper legal authority necessary to carry such desire into effect. That said minor is not within the knowledge of your applicants possessed of any estate of any kind. That your applicants are able to provide for the education and maintenance of said minor and are in no way disqualified and are proper persons to act as guardians of the person of said minor. That it is the wish and desire of said minor that your applicants be so appointed, as will appear from the written choice of your applicants as guardians by said minor, herewith filed."

The above application was granted October 7, 1916 and the Hunnicutts duly qualified as such guardians.

Mr. Trenckmann, the attorney who prepared the applications for change of name and for guardianship, testified that he knew Hicklin P. Hunnicutt; that he remembered preparing the applications and remembered talking to him at the time the applications were prepared. He did not remember talking to Bertha or to Helen Mar. We quote from his testimony:

"Q. In preparing this application did you and H. P. Hunnicutt discuss the matter of what character of proceedings should be filed and taken out in connection with their relationship to the ward, Helen Mar Hunnicutt? A. Yes; it seems to me that from his conversation with Judge von Rosenberg he had wanted a guardianship, but we discussed the effect of a guardianship and an adoption, too.

"Q. State whether or not then you discussed the question of whether or not there would be an application made for a guardianship, or whether they should adopt Helen Mar Hunnicutt? A. Yes, sir; it was discussed. He understood the difference between the two."

The witness then stated the reasons given by Hicklin P. Hunnicutt why he did not want to adopt Helen Mar. On cross examination he said:

"Q. Did Mr. H. P. Hunnicutt make any statement to you about a court adoption later at the time he had the guardianship—did he say anything to you about a court adoption later? A. No; except that he understood that he could always adopt her if he wanted to."

Helen Mar lived in the Hunnicutt home in Austin, attended Austin schools, became a teacher and followed that profession during her life. Her association and relations with the Hunnicutts and theirs with her were at all times that of daughter and parents. She called Hicklin P. "papa" and Bertha "mother" and when she was away she wrote letters to them as "papa" and as "mother." Hicklin P.'s letters to her usually began "Dear Helen."

On November 21, 1920, Bertha Hunnicutt wrote a letter to "Dear Edna" wherein she said:

"Five years ago we adopted a sweet little girl and I have had both the joy and work of mothering her making her clothes and caring for her in every way."

On December 15, 1942 she wrote a letter to "Dearest Helen" and signed it "Your own Mother."

On April 12, 1926 Helen Mar filed her application for an American Passport for travel in Europe wherein she listed H. P. Hunnicutt as her father. Attached to this application was an affidavit of H. P. Hunnicutt wherein he stated that he had known Helen Mar Hunnicutt for the past ten years and

"Helen Mar Hunnicutt was adopted by me through action of the District Court for the 53rd Judicial District, State of Texas, in Sept. 18, 1916. She was then fourteen years old and competent to give correct information concerning her parentage and place of birth. Her statement, taken in connection with other circumstances, convinced me that she was born in Cuba of American parentage, and was brought to the United States when a small child, possibly four or five years of age."

Also attached to the application was a certified copy of the order changing Theodora Brown's name to Helen Mar Hunnicutt.

The foregoing as offered in evidence was certified copies from the Department of State (U.S.A.) and which certificate certifies:

"That the documents hereunto annexed are true copies of documents taken from the files of this Department and constitute the following:

"1. Application upon which passport No. 207125 was issued on May 4, 1926 to Helen Mar Hunnicutt;

" *     *     *     *     *     *

"3. Affidavit of Birth executed by H. P. Hunnicutt regarding Helen Marr Hunnicutt;

" *     *     *     *     *     *

"5. Order of Court in Cause No. 34,136 entitled Ex Parte, H. P. Hunnicutt, et al, next friends of Theodora Brown, (change of name)."

Helen Mar Hunnicutt made application to teach in the State Teacher's College at Kingsville and described herself as the daughter of Hicklin P. and Bertha Hunnicutt.

On November 26, 1936 Hicklin P. wrote a letter to "My Dear Helen" wherein he said:

"Now I will try to turn my attention to that part of your letter that relates to the proposed application you are preparing for a government position:

"The best information I have about the place and date of the birth of your father is that he was born in Ionia County, Mich., in the year 1855.

"In making answer to blank No. 15, which reads, 'if parents are dead, state name, relationship and address of nearest living relative or friend' I would answer that by giving our name and address (Mr. & Mrs. H.P.H.).

"It depends upon the question asked whether you should omit answer to question about deceased parents. In this question No. 15 it is necessary for the state department to know whom it should report to in case of accident or death of the applicant.

" *  *  *  I believe your answers in regard to parents and relatives should disclose information as follows:

"She (meaning you) was born in— Cuba, as disclosed by the birth certificate (I understand the birth certificate is called for in one of the questions); that mother died when she was a young child; that father brought her with him to the United States after death of mother, and remained in this country continuously until his death; that during his life he cooperated in and agreed to the plan whereby Theodora Brown, a minor, became by adoption the daughter of Mr. and Mrs. H. P. Hunnicutt. This plan was consumated, and she has lived with them as daughter under the name of Helen Mar Hunnicutt more than twenty years, and still makes her home with them. I would advise you *against* making any reference to your father except by the name of Frank Brown. That name is in the birth cert. and also in the army records."

Bertha Hunnicutt died testate in 1943 and, among other bequests, she bequeathed property to "my daughter, Helen Mar Hunnicutt." She appointed "my husband, H. P. Hunnicutt, and my daughter, Helen Mar Hunnicutt" independent executors of her will. This will was probated and H. P. and Helen Mar Hunnicutt as executors filed an affidavit for inheritance tax appraisal of the estate. Helen Mar was therein listed as "daughter."

Hicklin P. Hunnicutt died testate in 1953 and devised property to "my adopted daughter, Helen Mar Hunnicutt." By a codicil dated subsequent to his will he increased the amount of money to be paid by Helen Mar in the exercise of an option to purchase land from $6,000 to $8,000, gave instructions to his executor and said:

"The intent and purpose of this codicil is to change and increase the amount of cash money which Helen Mar Hunnicutt is to pay, according to said Will dated January 5, 1944, to my Executor for one thousand acres of land  *  *"

The above will and codicil was duly probated and Helen Mar took under it. (Except the option to purchase is not now settled.)

On February 6, 1931 Helen Mar executed her will whereby she gave all of her property to "Mrs. Bertha Moorman Hunnicutt, wife of H. P. Hunnicutt" and appointed "H. P. Hunnicutt" independent executor. On March 20, 1948 she executed a codicil to the above will wherein she said: "Since Mrs. Bertha Moorman Hunnicutt * * * is now deceased" and in her stead she named "Mr. H. P. Hunnicutt" as beneficiary.

The will of Helen Mar has not been offered for probate and the parties do not claim property under it.

The evidence shows that Helen Mar was a teacher by profession and that she did teach one of which teaching positions was at the State Teacher's College at Kingsville. Hicklin P. Hunnicutt was a civil engineer and though the extent of Bertha Hunnicutt's education is not shown her letters and her will show that she was well able to think for herself and to understand her acts.

■ In his findings of fact the trial court found that prior to 1914 Frank Brown (Theodora Brown's father) and Hicklin P. and Bertha Hunnicutt entered into a contract of adoption whereby they agreed that the Hunnicutts would adopt Theodora Brown.

This finding cannot be sustained because there is no evidence to support it. At most there is no more than a scintilla of evidence, or a mere surmise, that Frank Brown and the Hunnicutts entered into a contract whereby it was agreed that the Hunnicutts would adopt Theodora Brown. This is not enough to prove such contract and to discharge the burden resting on appellees. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059. Appellant's point seven is sustained.

There is no direct evidence of an agreement to adopt and the finding, if it is to be sustained, must find support in the acts, conduct and admissions of the parties and the other relevant facts and circumstances.

There was testimony of witnesses that Helen Mar was generally regarded as the daughter of the Hunnicutts, that they called her daughter and one witness testified that in 1917 she was in the Hunnicutt home and Bertha told her that she had adopted Helen. In testifying as to what she had been told about Helen's background this witness said:

"That her mother and father were killed in a car accident and that he was a Presbyterian minister, and that there were five children and that they had been placed in Presbyterian homes and out for adoption, and that they had adopted her through the Presbyterian Church."

There is nothing in this testimony to support a finding that an agreement or contract to adopt Helen was entered into with her father. The recitals in both the application for change of name and the application for guardianship above quoted are directly opposed to the existence of such a contract. Further there is nothing in the letters, affidavits and wills above mentioned that in any way makes any reference to a contract of adoption. At most they only refer to an act of adoption but not to a contract to adopt.

■ We will briefly review the history of adoption in Texas. It was unknown to the common law but was purely statutory and to be effective there must be compliance with the statute. Thompson v. Waits, Tex.Civ.App., 159 S.W. 82. Er. ref. However in the civil law it has been recognized from the earliest times. State ex rel. Walton v. Yturria, 109 Tex. 220, 204 S.W. 315, L.R.A.1918F, 1079. In Jordan v. Abney, 97 Tex. 296, 78 S.W. 486, 489, the court said:

"This right (adoption) arises by operation of law from the acts of the parties made in compliance with the

statute, and does not depend on, or arise from, contract."

To the same effect is the holding in Taylor v. Deseve, 81 Tex. 246, 16 S.W. 1008. These cases were decided prior to 1920 and under the adoption statutes of 1850 and 1907. The statutes then in force (Arts. 42, 43 and 44) provided for adoption by deed filed in the office of the county clerk, for a written transfer of parental authority and also for adoption where the parents had voluntarily abandoned a child. These statutes were repealed in 1931 and provision for adoption by petition filed in the district court was made. Acts 1931, 42nd Leg. p. 300, Ch. 177. Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72, decided in 1934, departs from the above holdings and in considering an unrecorded "adoption paper" executed before a notary by the adopters together with a "relinquishment" executed by the parent of the minor both of which were delivered but not found at the trial, discussed contracts of adoption and holdings in other jurisdictions. The court concluded: "However, we are of the opinion that the real classification of the remedy is that of estoppel."

In Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972, 974, the court said:

"Under the statutes and the cases referred to it was incumbent upon respondent to plead and prove according to recognized rules of law and evidence that: (1) George Ann Barrow executed, acknowledged and filed a statutory instrument of adoption in the office of the County Clerk; or (2) George Ann Barrow undertook to effect a statutory adoption but failed to do so because of some defect in the instrument of adoption or in its execution or acknowledgment, or because of failure to record it; or (3) George Ann Barrow agreed with respondent, or with respondent's parents or with some other person in loco parentis that she would adopt respondent. The effort to comply with the statute in the second instance and the agreement to adopt in the third instance are a necessary predicate for the interposition of the equity powers of the courts to decree an adoption by estoppel in favor of one who, acting under and by virtue of such defective proceeding or such agreement, confers affection and benefits upon the other."

There is no assertion here that an instrument of adoption was filed in the office of the county clerk, and what we have said supra disposes of the issue and contention that an agreement or contract of adoption was entered into by the Hunnicutts and Frank Brown. It is asserted that the Hunnicutts attempted to adopt Helen Mar and that such attempted adoption was validated by Art. 46b, Vernon's Ann.Civ.St., which we quote:

"All adoption papers which were signed by an adopting parent or parents prior to August 21, 1931, and under the terms of which any child was attempted to be adopted, be, and the same are, hereby validated and made of binding force and effect, although said adoption papers were not authenticated or acknowledged as required for deeds, and were not prior to the death of the adopting parent filed for record with the County Clerk of the adopting parent's residence.

"All adoption decrees heretofore entered by District Courts in Texas, based on proceedings which conformed to the adoption statutes as thereafter or hereby amended, be, and the same are, hereby validated and made of binding force and effect."

This statute was first enacted in 1934 and was amended in 1937, 1947 and 1951. We have quoted it as amended in 1951 but we have examined the original Act and its amendments to determine the status of Helen Mar as it may exist under them. The words "Prior to January 1st, 1923" used in the original Act have been changed as now stated in the statute supra.

■ Appellees say that the change of name proceedings and the affidavit of Hicklin P. Hunnicutt attached to the application for a passport both supra are each acts of adoption validated by Art. 46b supra. To come within the terms of that statute there must have been: (1) adoption papers signed under the terms of which Helen Mar "was attempted to be adopted." Bertha Hunnicutt did not sign the affidavit and she need not be further noticed in connection with it. Or (2) an adoption decree entered by a district court. It is proper to here notice repealed Arts. 42 and 43, supra, they being in force at the time of both the change of name and the guardianship proceedings.

■ The decree entered in the change of name proceeding is not an adoption decree and there is nothing recited in it that purports to make it such. We quote the decree in full:

"In The 26th Judicial District Court of Travis County, Texas

"No. 34,136—Ex Parte: H. P. Hunnicutt, et al

"Now on this the 18th day of September, A.D.1916, at a regular Term of this Court, came on regularly to be heard the application of H. P. Hunnicutt and Bertha Hunnicutt, his wife, as next friends of Theodora Brown, a girl and a minor of the age of fourteen years asking that the name of said Theodora Brown be changed to Helen Marr Hunnicutt, And the Court having heard and fully considered such application and having heard evidence in connection therewith, and being fully advised in the premises, is of the opinion that the allegations in such application set out are sustained, and that it is for the best interest of said Theodora Brown that her name be changed as prayed for. It is thereupon ordered and decreed by the court that authority be and is hereby granted for the change of the name of said minor from Theodora Brown to Helen Marr Hunnicutt,

she to be henceforth for all legal purposes known under said latter name."

■ The parties do not so assert and we think the guardianship decree is not an adoption decree. It grants the application for and creates the status of guardian and ward and such status was assumed by Hicklin P. and Bertha Hunnicutt when they qualified as guardians of the person of Helen Mar.

We see no evidence of an attempt to adopt Helen Mar in the affidavit of Hicklin P. Hunnicutt supra. At most the recital as to adoption relates to a past occurrence which is identified as "action of the District Court for the 53rd Judicial District * * *" The parties here treat the decree referred to as being the decree quoted supra. There is no decree of the "53rd" district court in the record and it is not referred to or cited by the parties. The decree supra is the one attached to the affidavit.

Supra we have said that Helen Mar lived in the Hunnicutt home as a daughter and was regarded as such in the community. This status was consistent with the guardianship. This being true and when other facts and circumstances are considered we think that Hicklin P.'s designation of her as his adopted daughter was merely descriptio personae and is explained by his desire to assist her in obtaining the passport applied for. Conrad v. Herring, 36 Tex.Civ.App. 616, 83 S.W. 427. Er. ref.

■ When we consider the meaning of the phrase "attempted to be adopted" used in present Art. 46b and its predecessors we think it necessarily includes an intent to adopt. That is, there must have been present an intent to adopt coupled with an act to give effect to the intent. Here there is no evidence of the intent or of the act. It is true that if intent and the act were established then the evidence would be consistent with the status of adoption. The recitals in the applications for change of name and guardianship are adverse to intent to adopt. Moreover the application for

guardianship followed that for change of name for which there would have been no need if the change of name had been intended as an adoption of Helen Mar. The intent of Hicklin P. not to adopt Helen Mar is shown by the testimony of Mr. Trenckmann. The fact that he did not talk to Bertha Hunnicutt is immaterial since she did not execute the affidavit alleged to be an attempt to adopt Helen Mar.

The letter from Bertha Hunnicutt to "Dear Edna" supra is logically explained by her guardianship of Helen Mar's person and all the then existing facts and circumstances bring the effect of the letter well within the holding in Conrad v. Herring supra.

■ Art. 46b supra is a validating statute and makes valid prior acts that were intended but were imperfectly done. However its effect is limited to those prior acts named which were not effective because of noncompliance with legal requirements. 16A C.J.S. Constitutional Law § 421, p. 124.

■ Appellees say that the affidavit filed by Hicklin P. Hunnicutt with Helen Mar's application for a passport and also the affidavit for inheritance tax appraisal constitute judicial estoppels. We again note that Bertha was not a party to either. Appellees say these estoppels apply to Helen Mar and her heirs. We agree if such estoppels are shown to exist.

The office of Secretary of State of the United States, in which office the affidavit of Hicklin P. was filed, nor the office of the Texas Comptroller, which office finally passed on the affidavit for inheritance tax appraisal, are not courts and are not vested with judicial functions. It is true that the affidavit for inheritance tax appraisal was filed in the office of the county clerk of Travis County but that is a requirement of law. We think these affidavits do not constitute judicial estoppels. Helfer v. Mutual Benefit Health & Accident Ass'n, 170 Tenn. 630, 96 S.W.2d 1103, 113 A.L.R. 921. Each of the affidavits imposed a duty upon public officers to be performed after ascertaining facts. However such duty was ministerial and not judicial. Renaker v. Thompson, 287 Ky. 241, 152 S.W.2d 575.

It is to be noticed that here the parties are undertaking to inherit property from Hicklin P. and Bertha Hunnicutt by establishing the status of Helen Mar as their adopted daughter. This is in effect the reverse of the true principle of estoppel. "Estoppel can never be invoked to establish facts, but may only be used to prevent parties from relying upon facts which do exist." Quoted from McLemore v. Charleston & Memphis R. Co., 111 Tenn. 639, 69 S.W. 338, in Massachusetts Bonding & Insurance Co. v. Dallas Steam Laundry & Dye Works, Tex.Civ.App., 85 S.W.2d 937, 940, Er. ref. As has often been said estoppel does not in itself give a cause of action but it is a shield and not a sword.

■ There is no evidence in the record that shows Helen Mar was induced to come to the Hunnicutt home to live, or to show that she remained there, because of any belief that she had been adopted, and none to show that Hicklin P. and Bertha Hunnicutt received any benefits under the belief of an existing status of adoption. Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77. By giving effect to all of the evidence (the acts, conduct and admissions of the parties and the circumstances) favorable to the status of adoption the probative force of such evidence is so weak that it merely raises a surmise or suspicion of adoption and amounts to no evidence. Joske v. Irvine supra. The facts do not meet the test stated in Cavanaugh v. Davis supra. As there stated the test is:

"The question here is raised, as is ordinarily true in such cases, when the lips of the alleged adopter have been sealed by death and in an effort to establish an interest in property. Such claims should be received with caution. Before one should be decreed to be the adopted child and heir of another in the absence of compliance with the

statute prescribing a simple method of effecting the status, proof of the facts essential to invoke the intervention of equity should be clear, unequivocal and convincing." [149 Tex. 573, 235 S.W. 2d 978]

We hold that Helen Mar Hunnicutt was not the adopted daughter of Hicklin P. and Bertha Hunnicutt. This holding makes it unnecessary for us to consider the other questions presented by the appeal and accordingly we do not reach the question of the meaning of the term "the legally adopted heir of another" as used in Art. 2572, supra.

In accordance with the views herein expressed we reverse the judgment of the trial court and here render judgment distributing the entire estate of Helen Mar Hunnicutt among her lawful heirs as established by the judgment of the trial court and in the proportions therein specified, excluding from participation therein the heirs of Hicklin P. and Bertha Hunnicutt.

This judgment is without prejudice to the lawful administration of the Estate of Helen Mar Hunnicutt in the Probate Court of Travis County.

HUGHES, Justice.

I concur in the holding of the majority that there was no validation of an attempted adoption under Art. 46b, V.A.C.S.

I disagree with the majority in its decision that there was no evidence to support the finding of the Trial Court that an adoption by estoppel had been effected. It is also my opinion that such finding is not against the weight of the evidence. I do not elaborate upon this opinion because the facts are fairly stated in the majority opinion and they speak forcefully for themselves.

I am also of the opinion that the heirs of Helen Mar Hunnicutt are entitled to all of her estate because Art. 2572, V.A.C.S., under which appellees, the collateral heirs of the adoptive parents of Helen Mar Hunnicutt, claim may be invoked only in behalf of adoptive parents (or their heirs) of an intestate who was their "legally adopted heir."

In Calvert v. Johnston, Tex.Civ.App., 304 S.W.2d 394, affirmed Tex., 305 S.W.2d 778, it was held that a child not adopted in accordance with the statutes was not a "legally adopted child" within the meaning of inheritance tax statute Art. 7118, Class A, V.A.C.S.

I quote from the concurring opinion in Calvert v. Johnston [304 S.W.2d 399]:

"In Sommers v. Doersam, 115 Ohio St. 139, 152 N.E. 387, 389, Supreme Court of Ohio, the Court in considering a devise in a will conditioned that the devisee remained unmarried until her death and has 'legally adopted a child' had this to say:

"'The expression "legally adopted" means in accordance with the laws of the state in force and effect at the time of the execution of the will. These matters are, of course, statutory, as adoption was unknown to the common law of England; * * *. His use of the words "legally adopted" indicates his desire that any adoption made by his widow should be in accordance with the law of the land.'"

It is my opinion that the Legislature in enacting Art. 2572, supra, intended by the language used to create an exception to the general rule therein stated only in favor of persons adopted and made heirs in accordance with our statutes.

An adoption by estoppel is not an adoption made in accordance with the statutes and is not a legal adoption. It is an equitable adoption. Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72.[1]

1. See an excellent article in Vol. 36, p. 30, Texas Law Review, entitled Adoption by Estoppel, by Professor Edward W. Bailey.

The case of Rumans v. Lighthizer, 363 Mo. 125, 249 S.W.2d 397, is strikingly similar to this case and is of especial importance because the adoption statutes of Missouri are much like our own. Cubley v. Barbee, supra. See also Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77.

There the contest was, as here, between the blood kin of an adopted child and the blood kin of an adoptive parent who survived the adopted child but both of whom died intestate, the adopted child dying without issue or surviving spouse.

The Trial Court found that the child had never been legally adopted, because the adoption was not in accord with the statutes, but "was in equity and by estoppel" an adopted child and rendered judgment in favor of the heirs of the adopted child.

Under Missouri law at the time the imperfect statutory adoption of the child was executed the property of an adopted child who died intestate passed to its heirs excluding the adoptive parents and their kin. Subsequently and prior to the death of the adopted child this law was changed, the statute providing, in part, that

"When a child is adopted in accordance with the provisions of this article" Laws 1917, p. 194, V.A.M.S. § 1677

the adoptive parents should inherit from the adopted child as in the case of a natural child. No attempt to adopt under the provisions of this statute was made.

In affirming the judgment of the Trial Court the Supreme Court of Missouri, Division 2, in Rumans, stated:

"Equity acts to protect the child. A deed of adoption or writing is not essential to a decree of equitable adoption. Taylor v. Coberly, 327 Mo. 940, 38 S.W.2d 1055, 1060[3]; Ahern v. Matthews, 337 Mo. 362, 85 S.W.2d 377, 383[4]. The basis of the doctrine of equitable adoption 'has been recognized

to be that it is so inequitable and unjust to allow one to fail to comply with an agreement made with the parent or custodian of a child to adopt it, when he has taken the child at such an age that it had no will or choice of its own in the matter, that, after the child has performed everything contemplated by the relation provided for, the intended adoptive parent or his heirs will be estopped to deny an adoption.' Thompson v. Moseley, 344 Mo. 240, 125 S.W. 2d 860, 862,  *  *  *

"An equitable adoption functions to enforce the rights of the child under the agreement to adopt. The child is not chargeable with the adoptive parent's failure to record the deed, *and the enforcement in equity of the agreement to adopt should not confer additional rights upon the adoptive parent. The right of inheritance from the child is a different right from that of the child to enforce the agreement to adopt.* That a legal or statutory adoption, binding on all persons in accord with the statutory provisions, differs from an equitable adoption, which is based upon contract for the protection of the child and binding on the parties or those in privity with them, is the effect of Menees v. Cowgill, 359 Mo. 697, 223 S.W.2d 412, 418, a case reaching this court upon transfer from the Kansas City Court of Appeals, Mo.App., 214 S.W.2d 561, 571." (Italics added.)

As stated the Court in Rumans held that there was no legal adoption and that an equitable adoption could not inure to the benefit of the adoptive parents or their kin by permitting them the right of inheritance from the adopted child by estoppel.

If I am correct in my view that no legal adoption is shown here then if the Missouri case is right, and I believe that it is, the fact that an adoption by estoppel is shown making Helen Mar Hunnicutt an adopted child is not sufficient to confer upon her

adoptive parents or their kin the right to inherit from her.

For the reasons stated I concur in the majority holding reversing and rendering judgment in this case.