UNITED STATES of America, Plaintiff,

v.

CERTAIN LAND AND INTERESTS IN PROPERTY Situate IN RUTHERFORD COUNTY, STATE OF TENNESSEE, and Stones River Homes, Inc., A Corporation, et al., Defendants.

Civ. No. 2453.

United States District Court
M. D. Tennessee,
Nashville Division.
Jan. 6, 1964.

30. Id., p. 803, of 297 F.

31. 15 U.S.C.A. § 13(d).

32. 202 F.Supp. 768 (N.D.Ill., 1961).

33. Id., p. 777 of 202 F.Supp.

34. 28 U.S.C.A. § 1292(b).

Kenneth Harwell, U. S. Atty., Nashville, Tenn., and Ralph J. Luttrell, U. S. Dept. of Justice, Lands Div., Washington, D. C., for plaintiff.

Lewis S. Pope, Jordan Stokes III, Nashville, Tenn., Joseph M. Williamson, Urbana, Ill., Ernest D. Brookins, Atlanta, Ga., for defendants and movant, Edward S. Carmack.

Fyke Farmer, Nashville, Tenn., for intervenor, Joseph W. Hart.

WILLIAM E. MILLER, Chief Judge.

Condemnation proceedings have been initiated by the United States government to acquire certain apartment buildings adjacent to Sewart Air Force Base, Rutherford County, Tennessee. Joseph W. Hart (herein referred to as Intervenor) has been permitted to intervene in order to present an asserted interest in the property being condemned. Edward S. Carmack (herein referred to as Movant), one of the parties joined as defendant in the action, has moved for summary judgment against the Intervenor pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The factual issue is whether or not the Intervenor has an equitable interest in the property so that he will be entitled to share in the condemnation award. The Intervenor claims that the money he put up at the outset of the venture was an investment. The Movant claims that it was a loan.

Movant alleges that on three separate occasions, once under oath before a committee of the United States Senate, and in lettters to the Internal Revenue Service and to the Federal Housing Authority, the Intervenor stated that he did not have any beneficial or equitable interest in the property, and therefore that the Intervenor should be estopped to claim an interest and assert a position inconsistent with those previously taken.

There is a preliminary question whether estoppel in the present situation is to be decided as a matter of state or federal law. The rights in issue are not before this court as a result of diversity of citizenship, nor is a federally created right being asserted. Nevertheless, the principles stated in Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), seem applicable:

"Matters of 'substance' and matter of 'procedure' are much talked about in the books as though they defined a great divide cutting across the whole domain of law. But, of course, 'substance' and 'procedure' are the same key-words to very dif-

ferent problems. Neither 'substance' nor 'procedure' represents the same invariants. Each implies different variables depending upon the particular problem for which it is used. \* \* \*

"Here we are dealing with a right to recover derived not from the United States but from one of the States. \* \* \*

"And so the question is not whether a statute of limitations is deemed a matter of 'procedure' in some sense. The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the State, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our problem, namely, *does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?*" (At page 108 of 326 U.S., at page 1469 of 65 S.Ct., 89 L.Ed. 2079) (Emphasis supplied)

■ Although there the Court was dealing with a state statute of limitations, the Movant's contention as to estoppel is also a plea in bar which will significantly affect the result of the litigation between these two parties. Consequently it would appear that the applicable state rule should be applied by this court, or such rule as it is believed the state courts would apply if confronted with the same facts.

■ There are two distinct and separate doctrines here involved—estoppel in pais and judicial estoppel. Estoppel in pais requires, among other things, that the one seeking to invoke the estoppel must have been misled by the representation and have made a substantial change in position in reliance thereon. Here, however, it does not appear wherein the Movant has made any substantial change in position in reliance on the alleged

statements, and estoppel in pais has no application.

On the other hand, judicial estoppel does not require any such misapprehension or reliance.

"The Tennessee law of judicial estoppel (properly so called) has nothing to do with other parties to the suit; nor does it matter whether they even knew of the sworn statement. It is, as already stated, based solely upon that public policy which upholds the sanctity of an oath, and precludes a party who has made a sworn statement—even in another litigation—from repudiating the same when he thinks it to his advantage to do so.

"It might well be termed 'estoppel by oath.'" Sartain v. Dixie Coal & Iron Co., 150 Tenn. 633, 266 S.W. 313 (1924). At page 650 of 150 Tenn., at page 317 of 266 S.W.

■■ Although Tennessee is apparently a minority of one in its particular application of the doctrine of judicial estoppel (see Hatten Realty Co. v. Baylies, 42 Wyo. 69, 290 P. 561, 72 A.L.R. 587, 599–600 [1930]), it is clear that such a rule is recognized in Tennessee. The leading case in point is Hamilton v. Zimmerman, 37 Tenn. 39 (1859) where it was said:

"And for all the purposes of the present bill, the admission must be taken as true, without enquiring whether, as a matter of fact, it be so or not. The law, as against the complainant, presumes that it is true; and this presumption proceeds upon the doctrine of estoppel, which, from motives of public policy or expediency, will not, in some instances, suffer a man to contradict or gainsay what, under particular circumstances, he may have previously said or done. This doctrine is said to have its foundation in the obligation under which every man is placed to speak and act according to the truth of the case; and in the policy of the law to suppress the mischiefs from

the destruction of all confidence in the intercourse and dealings of men, if they were allowed to deny that which by their solemn and deliberate acts they have declared to be true. And this doctrine applies with peculiar force to admissions or statements made under the sanction of an oath, in the course of judicial proceedings. The chief security and safeguard for the purity and efficiency of the administration of justice is to be found in the proper reverence for the sanctity of an oath." At pages 47, 48 of 37 Tenn. The doctrine has to an extent been relaxed, in that prior statements can be explained and will not be binding if shown to have been mistakenly or inconsiderately made, or if they were merely expressions of opinion or legal conclusions. However, the rule has been consistently followed in Tennessee, and there appears to be no question that the Intervenor would be barred and estopped from asserting this claim if his prior disclaimers of ownership had been made under oath in a judicial proceeding. The question is whether the doctrine extends to a statement made under oath to a legislative investigating body.[1]

The exact interest or policy underlying the doctrine is not altogether clear from the Tennessee cases. Is it the sanctity of judicial proceedings that is paramount, or is it the oath? The doctrine arose quite some time before the widespread use of legislative investigations, and consequently the title or descriptive name—judicial estoppel—given to the doctrine would not alone be determinative. It may be of some significance that the rule is a corollary to, and perhaps an outgrowth of, the rule that one could not take inconsistent positions in his pleadings, a rule which was thought to be procedurally necessary.

Other jurisdictions have been reluctant to accept the Tennessee rule in its entirety because of the sometimes inequitable results which can be reached by a rigid application of judicial estoppel, and for this reason it "has encountered inhospitable reception outside the State of Tennessee." Parkinson v. California Company, 233 F.2d 432, 437–438 (10th Cir. 1956).

No cases, in Tennessee or elsewhere, have been found which deal with this precise issue. Thus far the rule has only been applied to statements made under oath in judicial proceedings. The only case where an extrajudicial oath was considered is Helfer v. Mutual Benefit Health & Accident Ass'n., 170 Tenn. 630, 96 S.W.2d 1103, 113 A.L.R. 921 (1936). In that case the plaintiff sued to recover benefits due him under an accident insurance policy. The defendant insurance company sought to invoke judicial estoppel on the basis of certain affidavits which plaintiff had given to the United States Pension Bureau concerning his health, and which were contrary to the assertions made in the action to support plaintiff's claim. The Court discussed the rule and the Sartain case, supra, and said:

> "The case [Sartain] also points out that judicial estoppel ordinarily applies to one who has made oath to a statement of facts in a former judicial proceeding, which in a later proceeding he undertakes to correct, and it is pointed out that, as a broad proposition, one who takes a particular position deliberately, in a course of litigation, without mistake induced by the opposite party, must act consistently with the position taken. In this, and in all other cases which we have been able to find, the doctrine of judicial estoppel has been made to apply only to oaths or positions taken in judicial proceedings. It seems to apply to oaths taken in litigation, though not limit-

---

1. The written statements contained in letters to the IRS and FHA could not in any event support the motion for summary judgment because there is an issue of fact whether the Intervenor knowingly signed the documents and whether they were ever actually delivered to the respective agencies.

ed to litigation between the immediate parties.

"The affidavits made by the plaintiff, and filed with the Pension Commissioner, are purely *ex parte*. The defendant had no connection with the matter. * * * There was no litigation. In seeking such pension, or an increase therein, and in making the affidavits touching the same, the plaintiff was not pursuing an absolute right. He could not go into court and by litigation force the recognition of the rights claimed through the affidavits—a pension increase. It was not a judicial proceeding. * * *

"In Behr v. Connecticut Mutual Life Insurance Co. (C.C.6), 4 F. 357, a widow sued to recover under a life insurance policy issued on the life of her husband; prior to his death, she had sued him for divorce, and in her sworn bill, charged that her husband had been an habitual drunkard for four years, which fact, if true, made him an habitual drunkard on the date the policy issued, and would have avoided the policy. It was sought to raise an estoppel against the widow, because of her oath to and charges in her divorce bill. There was proof, however, that such oath was made inadvertently, inconsiderately, and by mistake; it was held that the insurance company was not prejudiced by such oath, and a recovery was granted the widow. The court points out that it would make an odious estoppel to hold one forever bound by a falsehood, whether anyone was injured by it or not.

"These principles we think applicable to the base at bar. The defendant has not been prejudiced by the affidavits submitted by plaintiff, touching his pension. This being true, it would be an odious estoppel to hold him forever bound thereby." Pages 636, 637, 638 of 170 Tenn., page 1105 of 96 S.W.2d, 113 A.L.R. 921.

It is thus apparent that the doctrine of "judicial estoppel" has not been extended beyond statements made under oath in judicial proceedings, that the doctrine is not strictly speaking an "estoppel by oath", and that one will not be estopped to deny the truth of all statements made under oath, whether in the course of litigation or not. It is believed that the Supreme Court of Tennessee would not, if faced with this issue, extend the doctrine to legislative hearings. Undeniably the rule is a harsh and rigid one which deprives a litigant of the right to assert a claim, and its reach should not be extended beyond the limits already marked out by the highest court of the state.

Accordingly, the motion for summary judgment filed by Edward S. Carmack will be denied.