Sue F. SMITH, Executrix of the Estate
of Ray F. Smith, Plaintiff-Appellee,

v.

The TRAVELERS INSURANCE COM-
PANY, Defendant-Appellant.

No. 20448.

United States Court of Appeals,
Sixth Circuit.

Feb. 17, 1971.

**374**

John P. Branham and Richard D. Taylor, Nashville, Tenn., for defendant-appellant; Glasgow, Adams & Taylor, Nashville, Tenn., on brief.

J. M. Clement, Jr., Dickson, Tenn., for plaintiff-appellee.

Before EDWARDS and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

WILLIAM E. MILLER, Circuit Judge.

This removed diversity action concerns appellant's liability on a $50,000.00 Travel Accident Policy issued to appellee's husband. The insured was killed while driving a pickup truck owned and registered in the name of the Smith Machine Tool Company, a business owned by the insured and his family. The insurance policy covered appellee's husband while "riding as a passenger or operator in * * * a passenger automobile of the pleasure car type * * *." In the United States District Court for the Eastern District of Tennessee, Winchester Division, the jury awarded appellee $50,300.00, $300.00 of which was as a penalty for appellant's bad faith refusal to pay her claim and her costs of action. The District Judge denied appellant's motion for a new trial, 310 F.Supp. 726, and for a judgment notwithstanding the jury verdict. The appellant raises numerous questions on appeal, only four of which we find necessary for discussion.

■■ Appellant objects to certain jury instructions given by the trial court.[1] Since the appellant did not object to these instructions before the jury retired to consider its verdict, the appellant cannot raise the objections on appeal. Rule 51, Federal Rules of Civil Procedure. See Transamerican Freight Lines v. Universal Die Casting Co., 192 F.2d 931 (6th Cir. 1951). Although this court has strayed from the rigid application of this rule in an exceptional case "where the error is obvious and prejudicial to a party," O'Brien v. Willys Motors, Inc., 385 F.2d 163, 166 (6th Cir.

---

[1] Relying on Aetna Life Ins. Co. v. Bidwell, 192 Tenn. 627, 241 S.W.2d 595 (1951), the District Court took judicial notice of the fact that the pickup truck driven by the insured was a "passenger automobile within the meaning of this policy." The jury was instructed to treat it as such. (App. 48). The jury was left to decide whether the vehicle was "of the pleasure car type." In its deliberations the jury was instructed to consider the general use of this particular vehicle. The appellant, objecting to the court's instructions on the "passenger car" issue and its reliance on *Bidwell* as controlling, argues that the issue of whether this vehicle was a "passenger automobile" should have been left to the jury. No question is raised concerning the court's action in leaving to the jury the issue whether the vehicle was "of the pleasure car type" within the meaning of the policy.

1967), we do not find sufficient evidence of "plain error" to warrant the application of the exception in this action. The trial court's application of the relevant Tennessee law, which was used in his jury instructions, reflected a reasonable interpretation of the controlling Tennessee authority and did not constitute the "obvious error" required.

■ ■ Appellant also objects to the admission into evidence of two letters, entered as Exhibits Five and Seven, written to the appellant by appellee's attorney after denial of appellee's claim. Both letters were introduced solely on the issue of appellant's alleged bad faith refusal to pay on the policy within sixty days after the policyholder had made a demand for payment. If bad faith were shown, under Tennessee law the jury could have awarded appellee a maximum of twenty-five per cent of the face amount of the policy. T.C.A. § 56–1105 (1968). In the case at bar, although the maximum possible penalty would have been $12,500, the jury only awarded appellee $300 for appellant's bad faith. The insurer's good or bad faith is a jury question. Palatine Ins. Co. v. E. K. Hardison Seed Co., 42 Tenn.App. 388, 303 S.W.2d 742 (1957). We do not find it necessary to decide whether these letters were properly admitted into evidence, for assuming *arguendo* that they were improperly admitted, we find that the jury was presented with ample admissible evidence from other sources to find bad faith. Any error in admitting the letters would therefore be harmless under both federal, Masterson v. Pennsylvania R. Co., 182 F.2d 793 (3rd Cir. 1950), and Tennessee law, Gardner v. Burke, 28 Tenn.App. 119, 187 S.W.2d 25 (1944). Accordingly, the verdict cannot be set aside for this reason. 28 U.S.C. § 2111 (1964); T.C.A. § 27–117 (1955).

■ Appellant further complains of the closing argument of appellee's counsel where references were made to appellant's corporate status, its residence in another state, and its reliance on "fine city lawyers."[2] Appellant maintains that these statements were so prejudicial as to require a new trial. We agree that the remarks were in extremely poor taste and were obviously designed to prejudice the jurors. Taken alone the statements may well have been prejudicial. Yet, in the context of the entire record and in view of the curative instructions given by the District Judge and the other statements by counsel for both parties, we cannot find "affirmatively" that the remarks were so prejudicial as to affect the result of the trial and therefore require a new trial. Addison v. United States, 317 F.2d 808 (5th Cir.), cert. denied, 376 U.S. 905, 84

2. In his closing argument, the appellee's attorney made the following statements:

"Talk about big companies—I noticed two times these insurance lawyers—let's talk about these big insurance lawyers, two or three of them, representing the big insurance companies up here out of Hartford. Not even residents of Tennessee—not even a resident here. Let's talk about that. (T. 176–77).

"And you know why that thing [insurance policy] is phrased that way. They have got a great big staff of fine city lawyers like Mr. Glasgow and Mr. Taylor [appellant's counsel], one writing and one talking, one going and one coming, and one showing, and two looking, and two following, that it is the way it works, and it takes all of them— 'Philadelphia lawyers' some folks call them—city lawyers, to make up a mess like this in this amount of pages. (T. 178).

"We are not coming in here and saying because this is a big non-resident insurance corporation that don't [sic] even live here in Tennessee. We are not saying give us a verdict on account of that. We are saying look at this policy, the scope of it, the intent—what they meant to do. (T. 180).

"Let's don't [sic] take that magnifying stuff that is put in there with a battery of lawyers, lawyers that are a lot smarter than I am, because I don't know a whole lot about these things. Let's look at what they meant to do. (T. 180–81).

"I'll tell what: Let's send them back up to Hartford and let them know how we feel about it in Tennessee." (T. 181).

S.Ct. 658, 11 L.Ed.2d 605 (1953); Williams v. Bridgeford, 53 Tenn.App. 381, 383 S.W.2d 770 (1964); Petway v. Hoover, 12 Tenn.App. 618 (1931).

■ The jury was faced with two questions of fact. First, whether the vehicle in which the deceased was killed was of the pleasure car type. Secondly, whether the appellant acted in bad faith in refusing to pay the appellee's claim. The jury answered both questions in the affirmative. After a careful review of the record, we cannot say that the jury's conclusions were based on anything but a reasoned view of the evidence.

■ The District Judge properly admitted evidence of the use of the particular vehicle in question on the first issue. Aetna Life Ins. Co. v. Bidwell, 192 Tenn. 627, 241 S.W.2d 595 (1951). At the trial virtually all of the witnesses testified that the deceased had used this vehicle for pleasure rather than for business purposes.

The jury's response to the second question, concerning appellant's alleged bad faith refusal to pay the claim, was also supported by substantial evidence. Although the appellant could arguably contend that the policy did not cover the vehicle in which the deceased was killed, its method of investigating the claim and of informing the appellee of its decision were sufficient to warrant a finding of bad faith. Appellant had had its agent contact the appellee and obtain a signed statement from her eleven days after appellee's attorney had instructed the appellant to conduct future communications through him. Similarly, appellee had refused to state in writing its precise reasons for denying recovery,[3] although it had made a cryptic oral statement which was neither specific nor complete. These events could justify the jury's finding of bad faith in appellant's denial of liability. That the amount of damages the jury allowed ($300.00) was approximately two and one-half per cent of the total amount appellee had sought for appellant's bad faith refusal to pay on the policy is also significant. The relatively small amount awarded by the jury is indicative of its careful weighing of the evidence.

Regarding the allegedly prejudicial remarks, counsel for appellant himself told the jury of his client's corporate status and foreign residency before appellee's attorney brought out the same points. In addition, perhaps realizing the possible adverse effects of his vituperative argument, appellee's attorney tried to dull the impact of his own remarks. Immediately before the jury received its charge and immediately after the remarks complained of were made, the appellee's attorney told the jury:

> Ladies and gentlemen, whatever you feel is fair in your judgment, disregard my feelings, and this insurance company's feelings, and listen to His Honor's charge * * *.

Similarly, on two occasions the District Judge took curative measures to erase the prejudicial impact of appellee's attorney's statements. While the abrasive remarks were being made, the court sustained appellant's objection and noted in the jury's presence that "Yes, there has been too much appeal to prejudice." He then immediately instructed the jury: "Just disregard all this and decide it on the facts and the law as the Court gives it to you."

Furthermore, in his charge to the jury the court went to considerable lengths to instruct the jury to avoid giving any weight to the improper remarks of appellee's attorney:

> You must not be biased or prejudiced toward anyone involved, and must not be governed by sympathy, prejudice, or public opinion.

---

3. The appellant later informed the appellee's attorney in writing only that: "We must respectfully decline the claim made by Mrs. Smith [the appellee] as a result of her husband's death as his death did not occur in accordance with the terms and conditions of the policy. As you know, this is a limited Travel Policy and is not a blanket accidental death policy."

It's been a long time since this particular judge has heard as much pure appeal to prejudice as in this case. That has nothing to do with the right and wrong of the matter.

You are to consider fair [sic], fully, and without partiality all of this evidence, follow the law as stated to you by the Court, and arrive at the verdict which you think is just, fair, and right under all of the proof.

This lawsuit should be decided by you as if it were an action between persons of equal standing in the same community, of equal worth, who held the same stations in life. In no other way can you do even handed justice between the parties involved in this action.

The defendant happens to be a corporation, and a corporation is entitled to the same fair treatment at your hands as a private individual. The law is no respector [sic] of persons, and a corporation is, in the eyes of the law, a person. All persons including a corporation, stand equal before the law and are to be dealt with as equals in a court of justice.

█ Finally, appellant contends that the rule of "judicial estoppel" should be used to preclude appellee from asserting a position inconsistent with his prior sworn income tax statement. This argument is based on the fact that although the truck in which the deceased was killed was depreciated as a business deduction by and the title placed in the name of the Smith Machine and Tool Co., virtually all of the witnesses testified that the vehicle was used for purely personal purposes. If the jury had found that the vehicle had been used primarily for business activities, it is doubtful that the appellee could have recovered under the insurance policy. Despite the seeming conflict in the positions of the company in its income tax forms and the witnesses in the instant action, we find no cases where the Tennessee doctrine of judicial estoppel was extended to inconsistencies between judicial and non-judicial statements. See, e.g., Helfer v. Mutual Benefit Health and Acc. Assn., 170 Tenn. 630, 96 S.W. 2d 1103 (1936). See also, United States v. Certain Land and Interests in Property, 225 F.Supp. 338 (M.D.Tenn.1964).

Affirmed.