**Alice PLUMMER, Plaintiff in Error,**

v.

**Thomas PLUMMER, Defendant in Error.**

No. 39692.

Supreme Court of Oklahoma.

May 14, 1963.

Josh J. Evans, Vinita, for plaintiff in error.

Tony Jack Lyons, Pryor, for defendant in error.

PER CURIAM.

This action for divorce and child support was instituted by plaintiff in error, hereinafter referred to as plaintiff, on the theory that she and the defendant in error, hereinafter referred to as defendant (in the words of plaintiff's petition) " * * * entered into a verbal agreement to become husband and wife, which was duly consummated by cohabitation and mutual assumption of marital duties and obligations."

The controlling question at the trial was whether or not a common law marriage between the parties was established. By

its judgment in favor of the defendant, the trial court answered this question in the negative.

Our task in plaintiff's present appeal from said judgment is to determine whether or not that court erred in the respects she asserts.

Without interruption since some time after her former husband, a Mr. Houseberg, died on November 9, 1956, presumably at Coffeyville, Kansas, plaintiff has been receiving Social Security benefits in the amount of $87.10 monthly, as "Alice Houseberg", his unremarried widow.

By the time this case came to trial in 1961, the defendant was 29 years of age, married, and living with his wife in Wichita, Kansas. At the same time, plaintiff was 40 years of age. By 1957 she had borne eleven children. In the Fall of that year, she moved from Kansas with four of her children (a son and three daughters) to the Timber Hill Community of Craig County, Oklahoma. According to her testimony, her other seven children " * * * are in homes", and she was deprived of their custody in Kansas. The reason she gave for this was that her former husband was an alcoholic.

After plaintiff's move to Timber Hill, she became acquainted with defendant through her daughter, Mary, who was dating him. In November, 1957, he started spending week ends in the family's home and having sexual relations with plaintiff. It does not appear which month of that year plaintiff became pregnant, but a little more than a month after she and her family moved from Timber Hill to Bluejacket in February, 1958, she had a miscarriage. It was not until that month (February), according to plaintiff, that defendant mentioned marrying her. The following June (1958) plaintiff again became pregnant, when she conceived the baby, Richard Thomas, who is her twelfth child, and the only one of her children in any way related to this action.

On the eighth day of the same month (June, 1958) defendant departed for Colorado ostensibly to "hunt" work. A few weeks later, on July 1st, plaintiff and her family moved from Bluejacket to Vinita. She and the defendant did not again see each other until October, 1958, when they again did some cohabiting at Vinita. A week before Christmas of that year, arrangements were made for the family to move from Vinita into a cabin, or small house, owned by defendant's mother in Langley. There plaintiff and her family, and defendant, lived together until defendant left again a week before Richard Thomas was born on April 23, 1959. Where defendant went this last time does not appear, but insofar as the record shows, he and plaintiff were never again together.

At Johnson Memorial Hospital in Afton, where plaintiff gave birth to Richard Thomas, she attempted to make application for a birth certificate for him showing defendant as his father; and, at the trial she testified that, a month before this baby was born, defendant told her: "To put it in the name of Plummer." However, the Langley doctor who delivered the child destroyed plaintiff's application for such certificate. The only birth certificate offered in evidence at the trial was one not issued until October, 1959, after the Welfare Department had requested one. On said certificate, the baby's surname appears as "Houseberg", and the space provided thereon for his father's name was left blank.

At the trial, defendant denied that he had ever consented to giving the baby his name, and plaintiff openly admitted that he had always denied that Richard Thomas was his offspring.

In taking the position that the trial court's judgment (to the effect that she and defendant never had a common law marriage amenable to dissolution by divorce) is not, under the rule in Bothwell v. Way, 44 Okl. 555, 145 P. 350, supported by the evidence, plaintiff seems to recognize that the direct evidence of an actual and mutual agreement between her and defendant to enter into a marital, or husband-wife, relationship (as distinguished from a mere-

tricious one) is weak. (The gist of such evidence is that about 5 A. M., on or about February 28, 1958, defendant, in company with his friend Junior Beaver, came to plaintiff's Bluejacket dwelling; that he was drunk, and said: "Let's go get married, I've got a witness"; that she did not accept this suggestion, because she wanted to wait until daylight when defendant became sober; that defendant never mentioned marriage again). Plaintiff apparently takes the position that there is proof of *circumstantial evidence from which the trial judge should have inferred* that a mutual agreement to become, and live as, husband and wife, had been entered into between the parties.

■■ From a careful examination of the evidence, we think plaintiff's position is untenable. While there is an abundance of evidence that defendant periodically, or intermittently, lived with plaintiff in such a manner as to cause some who knew them to wonder if they were married, and others to believe, or assume, that they were, the occasions that plaintiff could remember, or describe, on which, according to her, defendant had referred to her as his wife in the presence of others, were so few, and of such a character, as to be unconvincing, and have little probative value, as against defendant's denials and other facts and circumstances indicating that defendant only fleetingly so regarded her. Undoubtedly, for periods of perhaps several weeks at a time, defendant enjoyed both the physical and economic benefits with plaintiff that a husband might from a wife, while he assumed only the minimum of a spouse's customary burdens and responsibilities. However, we think the parties' relationship lacked the mutuality, reciprocity, continuity, and too many other elements of a marriage relationship to justify disturbing the trial court's judgment. Without describing the circumstances upon which plaintiff relies to support the claimed error in said court's not drawing from the evidence the inferences she urges, we think it sufficient to say that

said judgment cannot be held to be clearly against the weight of the evidence.

Under a second assignment of error, plaintiff suggests that the trial court erred in allowing defendant's mother, Mrs. Cecil Plummer, to testify. Though the record does not reflect it, it seems to be tacitly agreed that, at the beginning of the trial, the court placed all witnesses under the sequestration rule. When Mrs. Plummer was called as a witness for her son, plaintiff's counsel made the following objection:

"If the court please, we object to any testimony of this witness. She violated the rule, she has been out there talking about what her testimony was going to be, and talked to all of the witnesses. And she has violated the rule of this court. She should not be permitted to testify."

After this objection was overruled, the only cicumstance, about which this witness testified, that pertained in any respect to plaintiff's and defendant's cohabitation, concerned their occupation of the house the witness owned at Langley. Plaintiff had previously testified that defendant made the arrangements for their renting of the house, while defendant denied this and testified that plaintiff had made the arrangements, directly with Mrs. Plummer, and on her own responsibility. The testimony given by Mrs. Plummer (after the above-quoted objection) corroborated that of the defendant. Part of plaintiff's testimony indicates, however, that Mrs. Plummer looked to plaintiff *and to* defendant for payment of the rent on the house; and plaintiff herself related that, though Mrs. Plummer had told her defendant promised to pay the rent, " * * * she knew he wouldn't do it."

■ The only case plaintiff cites in support of her position that the court erred in allowing Mrs. Plummer to testify is Garret v. Lacquement, Okl., 306 P.2d 696. In that case, we said, in effect, that it is within the discretion of the trial court to permit a witness to testify for impeachment purposes, despite violation of the sequestra-

tion rule, if his or her testimony does not go to the actual merits of the case. Here, we think that the matter of whether it was the defendant, or the plaintiff, who made the arrangements for occupation of Mrs. Plummer's cabin at Langley was not of such importance, when considered with the evidence as a whole, that the trial court's judgment would have been any different, had Mrs. Plummer not been permitted to testify. In Daniels v. Mohon, Okl., 350 P. 2d 932, 935, 936, we said:

> "* * * In cases tried to the court, where complaint is made that incompetent evidence was admitted, unless it is shown that such evidence *was considered and used* by the court in arriving at its judgment, no reversible error is presented." (Emphasis ours).

As plaintiff seems to concede that it was within the trial court's discretion to let Mrs. Plummer testify, we think that in order to predicate error upon an alleged abuse of said court's discretion in the matter, she should show, as above indicated concerning the admission of incompetent evidence, that she was prejudiced by it. As there is no indication that such prejudice occurred here, we can only conclude that the trial court's error, if any, in permitting Mrs. Plummer to testify, was harmless.

As her "Third Assignment of Error," plaintiff complains of the trial court's admission in evidence of the hereinbefore described birth certificate. She says this was unauthorized under Tit. 63 O.S.1961 § 560.5, subd. B; that the certificate was improperly submitted as part of plaintiff's cross-examination; and that its admission was also error because it was made out several months after the birth of the child, Richard Thomas, and does not show the information (hereinbefore referred to) that plaintiff gave the Afton Hospital at the time of the birth, for use in making out the certificate.

Defendant counters with the assertion that the certificate was not offered, or admitted, in evidence to prove the child's paternity, but merely to impeach plaintiff's testimony (on direct examination) to the effect that she had held herself out as "Mrs. Tommy Plummer" at all times after the two agreed to assume the status of husband and wife.

In a fourth, and last, "assignment", plaintiff complains of the trial court's alleged error in refusing to require defendant to submit to a "blood grouping test", as requested by plaintiff.

■ The record does not disclose a ruling by the trial court, admitting the birth certificate in evidence. But assuming, since it is stapled to a page of the record and marked "DEFT 1", that it was admitted, plaintiff does not deny (as represented in defendant's brief and indicated in the record) that this was done for impeachment purposes, and she submits no authority to the effect that it was improper to interrogate plaintiff about it on cross examination. Since defendant admitted having sexual intercourse with plaintiff and did not contradict the unmistakeable tendency of the evidence to show that this occurred repeatedly over an extended period in the customary husband-wife manner, whether or not a child was born as a result thereof, would appear to have little, or no materiality in proving, or disproving, the parties' common law marriage, especially since no effort was ever made to show that plaintiff had such relations with any other man, from the time she started with defendant, until the child, Richard Thomas, was born.

Likewise, since the child's paternity was not a matter affecting the merits, or proper issues, of plaintiff's alleged cause of action for a divorce, the trial court's refusal to require defendant to submit to a "blood grouping test" was not error (assuming the sufficiency of the record for a predication of plaintiff's present complaint concerning that ruling).

In view of the foregoing, it is our opinion that if any of the trial court's actions complained of under plaintiff's second, third and fourth "assignments" were error, they were harmless, and not prejudicial, especial-

844

ly in a trial without a jury, like the present one.

As we have hereinbefore determined, in dealing with plaintiff's first assignment of error, that the trial court's judgment is neither contrary to law, nor sufficiently lacking in evidentiary support to be disturbed, it is hereby affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and WELCH, DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.