Florence HAWKINS, Petitioner,

v.

OKLAHOMA SCRAP PAPER COMPANY, Aetna Casualty & Surety Corporation, Stella Mae Glover, Administratrix of the Estate of William (Bill) Glover, Deceased, Ella Mae Jones (also known as Ella Mae Glover), and the State Industrial Court, Respondents.

No. 40081.

Supreme Court of Oklahoma.

Jan. 21, 1964.

Rehearing Denied Feb. 18, 1964.

514

Berry & Berry, by Howard K. Berry, Jr., Oklahoma City, for petitioner.

Forest N. Simon and Thomas J. Lee, Oklahoma City, for respondent, Stella Mae Glover, Administratrix of Estate of William (Bill) Glover, Dec'd.

BLACKBIRD, Chief Justice.

The order entered by the State Industrial Court en banc on April 3rd, and corrected April 9th, 1962, and reviewed herein, sustained an order previously entered by one of its judges (hereinafter referred to as the "trial judge or court") awarding death compensation benefits to Stella Mae Glover (often referred to as "claimant") and her two children, Curtis and Shirley Ruth, as administratrix of the estate and surviving widow and 'minor son and daughter, respectively, of William (Bill) Glover, deceased. At the time of Glover's fatal accident on October 25th, 1961, he had been employed by Oklahoma Scrap Paper Company several years. The trial judge's conclusion that claimant, Stella Mae, was an heir of the said deceased employee was based upon his finding that she was Glover's wife "* * * by reason of a common law marriage * * *". Whether or not this finding is sufficiently supported by the evidence is the principal issue in this case.

The petitioner, who is Glover's mother, apparently recognizes that on the basis of the undisputed evidence Stella Mae, whose maiden name was "Atkins" and William, or "Willie", Glover lived together for several years in a relationship which resembled that of a husband and wife, at least in some respects; but she takes the position generally that this relationship was meretricious, that it amounted to concubinage, and was not sufficiently proved to have certain necessary elements of a common law marriage. Her attack on the sufficiency of the evidence pertains more to its quality and credibility than to its quantity.

Petitioner's "Proposition One" is:

"The evidence Before The State Industrial Court Was Not Clear And Convincing And Was Insufficient To Establish A Common-Law Marriage."

Under this proposition, she points out certain features of part of claimant's evidence which she attempts to show renders it incredible, unworthy of belief, or at least unconvincing as to certain essential ele-

ments of a common law marriage. The first of these pertains to the date which claimant and Glover agreed to live together as husband and wife.

■ After testifying that she moved with her parents from Boley, Oklahoma, to Oklahoma City, Oklahoma, in 1947, when she was only fourteen years of age and was still attending public school, claimant testified that in 1948, Glover (who was then in his late twenties) told her, at the home of her parents, and in their presence, that he wanted her to be his wife, and that she agreed, and that thereafter she and the two children started living with Glover in one side of a duplex, whose other side his aunt, Irene Sanders, occupied. Claimant's testimony was corroborated by her father, Les Atkins, who also testified that Glover asked him " * * * would it be satisfaction with me to live with Stella Mae and take care of the children and I told him yes." Atkins further testified that the subject couple took the children with them, when they moved to said duplex. The birth certificates of the two children in evidence, show, however, that the son Curtis was not born until June 24, 1949, and the daughter, Shirley Ruth, until July 24, 1950. Thus, if (as the named witnesses testified) the couple *took the children with them* when they left claimant's parents' home to begin living together, this *must* have occurred after the latter date, rather than in 1948, or at any time prior to July 24, 1950. We think that in view of this inconsistency and the conflict between this part, and other parts, of these witnesses' testimony, the date "1948" must have been an error; but whether this error was due to the witnesses' confusion, momentary lapse of memory, or to conscious prevarication, we do not think it impeached or nullified their testimony as to the fact that such an agreement was entered into, especially when this latter fact was never directly contradicted. We think it may be reasonably concluded from the evidence as a whole, that the parties' agreement to live together as husband and wife probably occurred in 1949 or 1950, rather than in 1948. Nor do we think the fact that Stella Mae's testimony contains some apparent conflicting statements as to her Oklahoma City street address, when she became acquainted with Glover, renders her testimony, as to the more pertinent facts, unworthy of belief.

■ The undisputed evidence shows that Glover and Stella Mae were still living together in 1958, while occuping a house Glover rented from one Herbert Slusher, who operated a grocery store in the same neighborhood. Slusher testified that both Glover and Stella Mae purchased groceries at the store and that he knew her as "Mrs. Glover". The evidence further shows that, although claimant, during the months of November and December, 1960, cohabited with one Lawrence Smith, a bellman at the Huckins Hotel, where she was employed as a maid, this was just a temporary interlude, and that she thereafter resumed, and continued, marital relations with Glover until his death; and Glover's income tax return for the year 1960, executed in March, 1961, in which he specifically claimed Curtis and Shirley as his dependent children, reflects no change in said taxpayer's marital status from that indicated in the earlier years of his and the claimant's relationship. We find nothing in the testimony of the Huckins Hotel bell captain, Howe, who was called as a witness by the petitioner, that renders the trial judge's finding questionable. If Stella Mae worked at the Huckins under her maiden name of "Atkins" it is not surprising that this witness, who testified that he knew her there " * * * I'd say pretty near a year and a half", and is not shown to have come into contact with her anywhere else, also testified that he had never known her to go under the name of "Glover". In our opinion, neither Howe's testimony, nor that of Glover's first cousin, Dorothy Johnson, nor his aunt, Irene Sanders, was unequivocal and responsive as to the matter of whether or not the couple's *general* reputation in the community was that of husband and wife. At least we cannot say, in the face of a finding to the contrary by the trial tribunal, who was able to ob-

serve the witnesses testify, that this testimony was sufficient to invoke application of the "divided reputation" rule which respondents urge in their Proposition Three. After thoroughly examining the evidence as a whole, we do not agree with respondents counsel that the testimony of the claimant of itself, shows that the reputation of her relationship with Glover was a "divided" one, in the community in which they lived together.

■ Furthermore, in view of the evidence as a whole on the subject, and what we have already said concerning the testimony upon which petitioner relies to make it appear that Glover and claimant agreed to live as husband and wife as early as 1948 (rather than later, after both children were born) we do not think the rule on contracts for future marriage or cohabitation is applicable to this case, as contended in petitioner's Proposition Two.

■ We are not impressed by the questions petitioner's argument raises concerning the paternity of claimant's children. They do not place in question the inescapable conclusion from the evidence that claimant and Glover had regular sexual relations, in the manner of a husband and wife, over an extended period of years. This being true, the paternity of the children is not of major significance in determining whether or not they had a common law marriage. In this connection, see Plummer v. Plummer, Okl., 381 P.2d 839, 843. In our examination of the record, the discrepancies petitioner points out between various statements claimant made before the trial, and her testimony at the trial, have not gone unnoticed, but, upon consideration of her conceivable motives in making such statements, her demeanor at the trial, and other matters which the trial judge was in a better position to appraise and weigh than are we, his conclusion on the principal issue of the existence of a common law marriage cannot be held to be clearly against the weight of the evidence.

■ As her Proposition Four, petitioner charges that the trial court committed re-

versible error in sustaining claimant's objection to opposing counsel's asking the witness, Slusher, if it were not true that in the named section of Oklahoma City, in which Glover and Stella Mae lived, men and women often lived together in the same house without ever consummating any type of marriage. The record shows that immediately following the court's ruling, counsel for petitioner offered to prove that, if the witness had been allowed, he would have answered that said "community" was of "such a nature that persons lived there in the same house, man and woman, not being husband and wife * * *". It is rather difficult to perceive how proof that couples lived together in the same section of Oklahoma City as Glover and claimant, without being ceremonially married, would have tended to prove that this couple's cohabitation, also without a ceremonial marriage, did not possess the necessary elements of a common law marriage; and we think the exclusion of such evidence, if error, was harmless under the circumstances, and therefore insufficient ground for vacating the award involved.

■ Under petitioner's Proposition Five she argues that because the record shows that in 1957 and 1958 Stella Mae, in connection with her unsuccessful application to the State Department Of Public Welfare for ADC benefits, made certain representations concerning her marital status, the paternity of her children, and other matters not necessary to mention—contrary to her representations in this case—she should be estopped to claim death benefits under the Workmen's Compensation Act. In support of this argument, petitioner cites the first paragraph of the syllabus of Magnolia Petroleum Co. v. Ouart, 200 Okl. 258, 192 P. 2d 698, as follows:

"A party is estopped to maintain inconsistent positions based upon opposite and irreconcilable claims of right, not only in the same action, but also in separate actions involving the same parties and questions."

We think the mere reading of the quoted syllabus shows that it is not applicable to the present case; and we so hold.

Petitioner's Proposition Six pertains to the Industrial Court en banc's claimed refusal to grant her a hearing on so-called "newly discovered" evidence, while the case was pending on her appeal to that tribunal. The matter arose in the manner hereinafter shown. After petitioner had filed her notice of said appeal to the Court en banc on February 2, 1962, the respondent and insurance carrier, on February 23, 1963, filed a pleading entitled "APPLICATION" in which it indicated its discovery in Bakersfield, California, of a woman referred to as "Ora Lee Glover" and "Ora Lee (Anderson) Glover", and represented her as claiming to be Willie Glover's wife. Attached to this pleading were undated, purported copies of letters from the said Ora Lee to an Oklahoma City insurance agency. One of the letter copies contained a number it represented as Mrs. Glover's telephone number in Bakersfield. About three weeks later, and not until March 14, 1962, the petitioner filed with the Industrial Court a pleading entitled "MOTION TO VACATE ORDER AND GRANT * * * A NEW TRIAL". In this pleading, signed by her attorney, he stated that he had learned from a named Oklahoma City attorney, as early as February 15th, 1962, that said attorney had received letters from an Ora Lee (Anderson) Glover, who professed to be Willie Glover's wife. This pleading contained further allegations to the effect that, not until February 24, 1962, did petitioner's attorney telephone the said Ora Lee, and was told by her that she had married Glover in Frederick, Oklahoma, in 1944. This pleading further alleged, among other things, that if the said Ora Lee " * * * was allowed to testify, she would state that she was the legal wife of Willie Glover and had never been divorced from him and that her civil marriage was consummated prior to the alleged common law marriage between the deceased and Stella Mae Atkins." No affidavit of Ora Lee (Anderson) Glover was attached to the above described motion to vacate and for a new trial, but, on the same date, there was filed in the Industrial Court an affidavit executed by one of petitioner's attorneys. This affidavit repeated the same representations concerning facts to which the said Ora Lee (Anderson) Glover *would testify, if she were allowed,* but, by way of accounting for said prospective witness's affidavit not being attached to petitioner's motion to vacate and for a new trial, the attorney's affidavit further stated that such affidavit " * * * cannot be obtained for the reason that * * (Mrs. Glover) presently resides in Bakersfield, California, and has employed an attorney to represent her in this proceedings which are adverse to the interests of intervener (petitioner) and would not give an affidavit."

In her initial brief, petitioner complains of never having had a hearing before, or determination by, the Industrial Court en banc on her motion to vacate and for a new trial on the ground of newly discovered evidence; and, citing Barfield v. Morris, Okl., 311 P.2d 235, and Rodriquez v. Utilities Engineering & Construction Co., Okl., 281 P.2d 946, she maintains that it was the duty of said Court to grant her a hearing on said motion. In her reply brief, however, petitioner reveals that oral argument was had before that court the day before it entered its order affirming the trial judge; and this was more than two weeks after the motion and above described affidavit were filed. No one represents that both the motion and affidavit were not before the court at the time of said hearing, that the petitioner's attorney was remiss in not calling them to the court's attention before or during the oral argument, or that the court did not, in fact, consider them. Petitioner's attorney says only that the transcript before us does not show that they were considered.

Under the circumstances, and in view of the fact that petitioner's formulation of, and predication of error on, her "Proposition Six" proceeds from the court en banc

# 519

"* * * *refusing* to reopen the case and grant petitioner the right to introduce further evidence", rather than said court's *failure to rule* on her motion (in this connection see In re Cully's Estate, Okl., 276 P.2d 250, 255) we think said court's order of April 3, 1962, must be deemed an adverse ruling on said motion.

Furthermore, although, part of petitioner's quotation from the Barfield Case is that the "* * * Industrial Commission is not required to proceed in strict compliance with rules of court * * *", since petitioner's briefs represent that her efforts to obtain a new trial on the ground of newly discovered evidence have been made pursuant to the sections of Title 12 O.S.1961, governing such procedure in courts generally, and since, by its reference to the court's "discretion" in such matters, her Proposition Six obviously seeks application of the same standard used in determining errors of civil courts in such matters, we think she may be regarded as having acceded to her motion being adjudged on the basis of decisional interpretations of these statutes as applied to such motions, when filed in such courts. When this is done, it cannot be held that the Industrial Court "* * * abused its discretion in refusing to reopen the case and grant petitioner the right to introduce further evidence" on the basis of her motion and its accompanying affidavit by her attorney. In Richardson v. Shaw, Okl., 313 P.2d 520, 523, we quoted the following from Glen v. Buck, Okl., 272 P.2d 573:

> "Where a motion for new trial is made on the grounds of newly discovered evidence, it is essential that the affidavits of the witnesses who will give the newly discovered evidence should be produced, or their absence accounted for. As a general rule, *the unsupported affidavit of the applicant or his attorney* will not be sufficient."

In view of the foregoing, and of the obvious inconsistency and incomprehensibility of Ora Lee (Anderson) Glover's claimed willingness to testify, but unwillingness to execute an affidavit, as shown above to have been represented in petitioner's attorney's affidavit accompanying her motion, we hold that the Industrial Court en banc did not abuse its discretion in refusing to grant, or sustain, the motion.

Since our review of the record, and the arguments of the petitioner, have demonstrated no valid cause for disturbing the award of the State Industrial Court, the same is hereby sustained.

HALLEY, V. C. J., DAVISON, JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.

BERRY, J., dissents