All the Justices concur.

**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a Corporation, Plaintiff in Error,**

**v.**

**J. A. NesSMITH, Defendant in Error.**

**No. 41560.**

Supreme Court of Oklahoma.

Oct. 3, 1967.

Rehearing Denied Dec. 19, 1967.

E. D. Grinnell, Jr., St. Louis, Mo., Franklin, Harmon & Satterfield, Oklahoma City, for plaintiff in error.

Tow Shaw, Madill, for defendant in error.

BLACKBIRD, Justice.

This appeal involves an action instituted by defendant in error, hereinafter referred to as "plaintiff", under the Federal Employers' Liability Act (FELA), 45 U.S.C.A. § 51 et seq., from plaintiff in error, hereinafter referred to as "defendant", on account of personal injuries he allegedly suffered while employed by said defendant as a welder's helper, on September 27, 1962.

When allegedly injured, plaintiff and his foreman, Mr. W. C. Dye, employed by defendant as a "frog", or switch, repairman, were removing the angle bars joining sections of defendant's railroad track, near the depot at Ravia, Oklahoma, preparatory to replacing the insulation between these rail sections, where they were joined and held together by the angle bars. At the particular joint, or joinder of rail sections, where plaintiff and Dye were working, the angle bar had adhered to the rail sections (referred to as being "froze") and it was necessary to pry it away from them. To do this, a "claw bar", or crow bar, five feet long, was wedged in between the rail and the angle bar. While plaintiff, grasping the crow bar handle, with his foot placed against the outside of the track, was pulling the crow bar handle toward him to pry the angle bar away from the track, Dye struck the angle bar with an 8-pound "mundy maul", or sledge hammer, causing the crow bar to suddenly become dislodged and plaintiff to lose his balance and fall to the ground on the railroad right of way, suffering the alleged personal injuries involved here.

After the accident, plaintiff resumed working, and continued the rest of that day, but missed work the next day. Thereafter, he returned to his job and continued to work for defendant until the day after Thanksgiving when he was convicted of income tax evasion at Fort Worth and was thereafter incarcerated in the federal correctional institution at Seagoville, Texas, until June 21, 1963.

About three months after he left Seagoville, plaintiff commenced the present action in September, 1963, alleging in his amended petition that his fall and injuries hereinbefore referred to were caused by the negligence of the defendant and its foreman, Dye, in several particulars, some of which were described as follows:

"* * *

"(C) Failure of the defendant to furnish the plaintiff a reasonably safe place to work in that the common crow bar above five (5) feet long was not a reasonably safe and suitable piece of equipment with which to loosen said angle bar;

"(D) The act of the defendant's agent and foreman, W. C. Dye * * * in instructing the plaintiff to use equipment which was known or should have been known to be unsafe and unsuitable to perform the particular job that plaintiff was instructed to perform, to-wit: loosening an angle bar from a railroad track;

"(E) The defendant knew or should have known that using equipment such as a claw bar to remove an angle bar from the track would create a dangerous condition and situation and would likely result in injuries to the plaintiff;

"(F) Failure of the defendant's agent and foreman, W. C. Dye, to warn the plaintiff that he was about to hit said angle bar with said (8) pound sledge hammer; * * *."

In paragraph VI of his amended petition, plaintiff alleged that, on the date of the accident, he had a previously existing arthritic condition in his lumbar spine, but further alleged that the accident aggravated it, because of "a progressively narrowing of the disc spaces in the entire lumbar spine", and that it caused the spinal discs

to progressively and continuously deteriorate.

Plaintiff further alleged that, on the date of the accident, he was a "healthy, able-bodied man" of the age of fifty years, with a life expectancy of 20.91 years, and was earning $4,852.12 per year.

Plaintiff further alleged, in substance, that since the accident, he has suffered extreme pain in his back, hips and legs, and will continue to do so the rest of his life, the pain and suffering being permanent. His petition set forth the amount he allegedly had expended in medical bills as a result of the accident, and further alleged that he will be compelled to spend additional sums for medical treatment in the future.

The total amount of damages plaintiff prayed for was $132,720.20, including $101,-409.20 for loss of future earnings, $25,000.00 for future pain and suffering, and $6,270.00 for future medical treatment.

Defendant's answer to plaintiff's petition contained a general denial, a plea of contributory negligence, and special denials that its employee, Dye, "was in any way negligent in hitting the angle bar with a sledge hammer since this is a common customary and accepted method for moving 'angle bars' or 'joint bars' * * *" and that the tools used by plaintiff and Dye in the work were safe and proper, and the ones ordinarily used in such work. Defendant specifically denied that plaintiff suffered any injury that had impaired his ability "to work or earn."

When the case came to trial in November, 1964, plaintiff was allowed to file a reply in the form of a general denial, and it was stipulated that he had a life expectancy of 20.91 years. When plaintiff testified at the trial, defense counsel elicited from him, on cross examination, the information that, after he left defendant's employment, he had applied for, and received, unemployment benefits through the Railroad Retirement Board, beginning before October, 1963, and ending May 31, 1964; and that, on his applications therefor to said Board,

he had answered affirmatively inquiries as to whether he was "ready, willing and able to work."

At the close of the trial, the cause was submitted to the jury under instructions which permitted it to include in its verdict, an assessment of damages for plaintiff's loss of future earnings, among the other items of damages he had alleged. After a general verdict for plaintiff in the sum of $47,900.00, judgment was entered accordingly. After other proceedings, unnecessary to mention, a motion for a new trial, filed by defendant, was overruled. Thereafter, defendant perfected the present appeal.

Under its first proposition for reversal, defendant asserts that, in submitting the issue of plaintiff's alleged impairment of earning capacity to the jury, the trial court committed prejudicial error. This proposition evidently refers to the court's instruction No. 20, which was, in part, as follows:

"* * *

"If you find that he (plaintiff) will suffer any disability in the future, you should take into account and consideration the extent to which he has been incapacitated to work and earn money in consequence of his injuries, and the amount of earnings which the plaintiff has lost from the time he was injured up to the present time as a direct result of his injuries, and the amount of earnings, if any, it is reasonably certain, as shown by the evidence, that he will lose in the future directly and proximately in consequence of such injuries, * * *."

Defendant takes the position that, because of plaintiff's above mentioned representations to the Railroad Retirement Board that he was able to work during the period after the accident, for which he received unemployment benefits, "he was estopped to assert that he was disabled from performing railroad work * * *". Defendant invokes the doctrine of "judicial estoppel" on the theory that the provisions of the Railroad Unemployment Insurance Act, 45 U.S.C.A. § 351 et seq., show that, in its adjudication of claims for unemployment benefits, such

as plaintiff's the Railroad Retirement Board acts in a "judicial or quasi judicial proceeding * * *". Defendant's counsel cite no cases involving the Railroad Retirement Board, but, on the apparent hypothesis that its action on claims for unemployment benefits is analogous to findings of the Veterans Bureau, cite United States v. Kearns, (C.C. A., 10th Cir.) 115 F.2d 552, 555, in which the court said the findings of that Bureau "are clothed with same force and effect as a judicial determination."

This court has never before determined whether a party, in a court action like the present one, may be "judicially estopped" to take a position concerning his ability to work, that is inconsistent with, or contrary to, the representations he has made to such a Board. In Hawkins v. Oklahoma Scrap Paper Co., Okl., 389 P.2d 513, we held inapplicable to the claimed dependent wife of a deceased employee, in her proceeding for death benefits under the Workmen's Compensation Law, the rule stated in Magnolia Petroleum Co. v. Ouart, 200 Okl. 258, 192 P.2d 698 (cited by defendant) as follows:

> "A party is estopped to maintain inconsistent positions based upon opposite and irreconcilable claims of right, not only in the same action, but also in separate actions involving the same parties and questions."

And we notice that other courts have held that affidavits for inheritance tax appraisals and affidavits previously filed with the United States Pension Bureau by a plaintiff against whom a defendant-insurer sought to invoke the doctrine of judicial estoppel (where said defendant had "no connection" with the Pension Commissioner, as the evidence in the present case shows the defendant had no connection with the Railroad Retirement Board) did not constitute judicial estoppel. See Moorman v. Hunnicutt (Tex.Civ.App.), 325 S.W.2d 941, and Helfer v. Mutual Benefit Health & Accident Ass'n., 170 Tenn. 630, 96 S.W.2d 1103, 113 A.L.R. 921, cited therein (at p. 950).

Defendant recognizes that, generally, a position taken by a party in one kind of a proceeding will not estop him from taking a contrary position in a later court action against a party, *who was a stranger to the first proceeding;* but its counsel say this does not hold true where the party sought to be estopped, has obtained an advantage, or received a benefit (as did plaintiff in his proceeding before the Railroad Retirement Board) as a result of the position taken in the earlier proceeding. In support of this contention, defendant cites the Wyoming case of Hatten Realty Co. v. Baylies, 42 Wyo. 69, 290 P. 561, 72 A.L.R. 587, which he says this Court in Harrell v. Horton, Okl., 401 P.2d 461, impliedly recognized by citing with approval Parkinson v. California Co., (U.S.C.A. 10th Cir.) 233 F.2d 432, which counsel say "cited the Hatten Realty Case, supra, with approval * * *". From a reading of the opinion in the Parkinson Case, we do not understand that the exception made to the general rule in the Hatten Realty Company Case, to accommodate the facts of that case, was approved in the Parkinson Case; nor do we agree that this court has never impliedly approved such an exception. While we have applied the doctrine of estoppel by judgment (see Lewis v. Aubrey, Okl., 404 P.2d 1005, and cases cited therein)—a different doctrine than the one here involved—we have never applied the rule, which may be referred to as that of "inconsistent positions" (see 28 Am. Jur.2d, "Estoppel and Waiver", §§ 68 et seq.) where the party seeking to invoke the rule was not an adversary, or in privity with one, in the action, or proceeding, in which the previous representation was made —as was the situation in the cases of Tyra v. Board of Police and Fire Pension Com'rs., 101 Cal.App.2d 248, 225 P.2d 617, and Scarano v. Central R. Co. of New Jersey (U.S.C.A. 3rd Cir.) 203 F.2d 510, cited by defendant—or where the representations did not concern the same claim for benefits or recovery, tort, or "transaction" involved in the later proceeding, or action, in which the rule of inconsistent positions is invoked —as in Brown v. Brown, Okl., 410 P.2d 52,

Loomis v. Church, 76 Idaho 87, 277 P.2d 561, and Garbe v. Halloran, 150 Ohio St. 476, 83 N.E.2d 217, all cited by defendant, and Barnes v. Clark, Okl., 364 P.2d 693, cited by plaintiff.

■ Assuming, without deciding, that some of the so-called "essentials" which in the Barnes Case we quoted from Colvert Ice Cream & Dairy Products Co. v. Citrus Products Co., 179 Okl. 285, 65 P.2d 455, may not enter into application of the rule of inconsistent positions, to the same extent that they do in equitable estoppel proper (see 28 Am.Jur., 2nd, supra, p. 697, note 2) and recognizing that the matter is not without confusion and some difficulty, we think that plaintiff's previous representations concerning his ability to work, made for the purpose of obtaining unemployment benefits through the Railroad Retirement Board, can only be placed in the same category as "quasi admissions" which were defined in Chicago R. I. & P. Ry. Co. v. Mashore, 21 Okl. 275, 96 P. 630, 17 Ann.Cas. 277. In conformity with that opinion, and with what we said in Harrell v. Horton, supra, we hold that those statements were entitled to consideration as admissions, but did not estop, nor preclude, plaintiff from sustaining, by competent evidence, his allegations as to his loss of future earnings, from defendant's negligence in the accident of September 27, 1962. The same decision applies to the statement made in plaintiff's letter of October 30, 1963, to his Division Engineer, which defendant also refers to under its Proposition I. In so concluding, we have not ignored the fact (referred to by defendant as a distinguishing factor between this case and that case) that in the Mashore Case, supra, the plaintiff obtained neither a judgment, nor other benefit, on the strength of his initial representations; but, in view of what we have said concerning the necessary relationship between the inconsistent, or contradictory, representations, we do not consider that a significant factor here.

■ In its Proposition II, defendant contends that the trial court committed prejudi-cial error in giving the jury his instructions numbered 6 and 8 dealing with defendant's alleged failure to furnish plaintiff with safe tools. To support their representation that "the undisputed evidence failed to support such an allegation", defense counsel quote a portion of plaintiff's cross-examination in which, as an answer to counsel's question: "* * * Did the condition of the tools have anything to do with your accident?"—plaintiff answered: "I wouldn't think so." To refute defendant's representation as to "the undisputed evidence", opposing counsel points to the testimony of plaintiff's witness, Jack Reynolds, who was employed by defendant as a section foreman for 26 years. An excerpt from Mr. Reynolds' testimony is as follows:

"Q * * * Mr. Reynolds how would you proceed to take an angle bar off of the track?

"A Well, I would release the nuts from the bolts, and knock the bolts out, and take a sledge hammer—we called it a 'mundy maul' for short—and hit that joint, and if it didn't come loose then *I would take a traction chisel* and go behind that bar, and—

*       *       *       *       *       *

"A * * * they usually came loose that way." (Emphasis added).

There is no evidence in this case that plaintiff and Mr. Dye were furnished with a traction chisel, or instructed to use one, in loosening angle bars that were "froze" to rails; and it may be reasonably inferred from Mr. Reynolds' testimony that the way plaintiff and Mr. Dye tried to free the angle bar from the rail (without using such a chisel) was a dangerous practice. In view of this testimony, we find no merit in defendant's arguments to the effect that defendant's alleged failure to furnish plaintiff and Dye with suitable and safe tools, with which to remove the angle bar, was not an issue in the case, and that the trial court therefore erred in instructing concerning it.

In the further complaint about instruction No. 6, which defendant advances under

its Proposition III, he contends that, by giving said instruction, the trial court "misstated the law" as to the duty it owed plaintiff and deprived it of its right to a fair trial. In its Proposition IV, defendant contends that this instruction and the court's Instruction No. 9 were contradictory, and infers that such contradiction confused the jury.

The court's Instruction No. 6 reads as follows:

"You are instructed that the duty to exercise ordinary care to provide an employee with a reasonably safe place to work, and with safe tools with which to work, is an absolute non-delegable and continuing one, and extends to all places where the employee may be required to go in the course of his duties."

The court's Instruction No. 9 told the jury that:

"A railroad company is not an insurer that its employees place of work is absolutely safe, but is chargeable only with the duty to use reasonable care and diligence to see that the place of work is reasonably safe for the employee. The proper test to be applied in determining whether a railroad company has furnished a reasonably safe place for the employee to work, and reasonably safe tools with which to work, and a proper method and manner of work is whether the place of work so furnished and tools furnished, and the method and manner of work, are such that an ordinary person of prudence would have provided for the employee under the same or similar circumstances."

In connection with its contention of error in Instruction No. 6, defendant recognizes the instruction's correctness in referring to defendant's duty to provide plaintiff with a safe place to work and safe tools, as only a duty to exercise ordinary care to do this, but its counsel argue that this was "effectively vitiated when the trial court (in the same instruction) subsequently states that the duty 'is an absolute * * * one', thus effectively instructing the jury that the defendant's duty to provide the plaintiff with a safe place to work and safe tools as one which operates and exists under all circumstances without variant and exception and is free from qualification." Defendant further says that said instruction "in effect made it an insurer by referring to its duty as being 'absolute'"; and cites Georgia S. & F. Ry. Co. v. Meeks, 110 Ga. App. 143, 137 S.E.2d 919 in support of its argument.

■ We think defendant's argument misinterprets Instruction No. 6 and attributes to it an effect which it cannot reasonably be said to have had. We recognize, as did the Georgia Court in the cited case, that the defendant's duty to furnish safe tools and a safe place to work, under the FELA, cannot be called "absolute" in the sense that it transcends, or renders immaterial or ineffective, the defendant's exercise of ordinary care (as distinguished from the duty to equip its cars with automatic couplers under the Safety Appliance Act. See Kansas City Southern Ry. Co. v. Johnston, Okl., 429 P.2d 720) but when the whole instruction is read, and especially when it is considered with Instruction No. 9, and the court's other instructions, including Instruction No. 2, it is obvious that this was not the sense in which the word was used. In order to so construe the challenged instruction, one must ignore all of its other wording. It differs materially from the wording of the erroneous charge of the court in the Georgia S. & F. Ry. Co., Case, supra. As we read Instruction No. 6, it is plain to us that the court used the word "absolute" there, as a complement to the word "non-delegable", and to make it plain to the jury that any failure on the part of the defendant in its duty to use ordinary care in the matter of furnishing safe tools and a safe place to work, was not to be excused, or obviated, by other considerations, such as any duty on the part of plaintiff's foreman, Dye, or plaintiff's fellow-servants, or of the plaintiff himself. We therefore find no merit in defendant's arguments under its Proposition III.

Consistent with the above views, we find no merit in defendant's arguments under its Proposition IV to the effect that instructions No. 6 and No. 9 are contradictory, and were probably confusing to the jury.

Under its last Proposition ("V"), defendant argues that the verdict was grossly excessive, appearing to have been rendered under the influence of passion and prejudice. In support of this argument, it points to the fact that plaintiff's service, as an employee of defendant, terminated when he was sentenced to be confined at Seagoville. The fact that plaintiff then had no job, from which to lose wages, and the further fact that, after the accident, he lost only one day's wages while such an employee, are used as the basis for defendant's argument that plaintiff's evidence was insufficient to show any loss of earnings, except a nominal amount. After pointing out that plaintiff's amended petition prayed for no more than $25,000.00 damages for future pain and suffering, defendant's brief represents that the "only other evidence upon which the jury could have based any sort of a verdict was the testimony" of plaintiff's Dr. F, as to his future medical expenses, which, at the annual rate of this Doctor's estimate (for the period of plaintiff's life expectancy) would amount to the approximate sum of only $2,000.00. Thus defense counsel arrive at their stated conclusion that plaintiff's verdict was greatly in excess of "plaintiff's claimed damages which were supported by any evidence."

■ Defense counsel's argument is persuasive, but misleading. It does not effectively deal with the very important damage item of "loss of future earnings", for which plaintiff sought the sum of $101,-409.20. While it recognizes, by reference to St. Louis-San Francisco Ry. Co. v. Tompkins, Okl., 409 P.2d 1, the absence of an accurate basis for a remittitur, in cases where, as here, the verdict is a general one and furnishes no clue as to the size of the jury's allowance for any of the separate items of plaintiff's alleged damages (also referred to in the Kansas City Southern Ry. Co. Case, supra) defendant's argument fails to recognize the same situation, as an obstacle to our agreeing with its conclusion that the verdict here is excessive.

■ To further support its argument, defendant refers to the proof that, for some time, plaintiff has operated an automobile service station that is open for business about twelve hours per day, seven days a week, and has one employee; but defendant's argument makes no reference to plaintiff's testimony to the effect that, after paying the wages of this employee, (who, because of plaintiff's disability, must do the heavy work around the station) and paying the station's other operating expenses, plaintiff has a net income from the station of only about $100.00 per month. Nor does defendant contend that this difference in plaintiff's present earnings, and his wages while its employee, should not have been taken into consideration in the jury's assessment of plaintiff's damages for loss of future earnings. If the jury considered only part of the difference between plaintiff's present earnings and the annual wages he received from defendant, and multiplied the result of this subtraction by the number of years of plaintiff's life expectancy, it could have arrived at a larger sum than the verdict, for *only one* of plaintiff's alleged items of damages, to-wit: loss of future earnings. When this is considered, along with defendant's recognition, in part of its argument, that there was evidence as to every other item of plaintiff's alleged damages— never directly contended by defendant to be incompetent, but described only as "weak" —it will be seen that defendant fails to demonstrate excessiveness in the verdict. Neither in the evidence referred to in defendant's arguments, nor in the record as a whole, do we find a tenable basis for concluding that the verdict in this case was excessive. We therefore find no valid basis for concluding that it was probably rendered under the influence of passion and prejudice, as asserted in defendant's Proposition V.

As we have found no cause for reversal in any of defendant's arguments, the judgment of the trial court is hereby affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BERRY, LAVENDER and McINERNEY, JJ., concur.