**Tandra D. TOWNSEND, Petitioner,**

v.

**DOLLAR GENERAL STORE, National Union Fire Insurance Company and the Workers' Compensation Court, Respondents.**

**No. 81299.**

Court of Appeals of Oklahoma, Division No. 4.

Oct. 12, 1993.

W.E. Sparks, Tulsa, for petitioner.

Steven K. Bunting and Phillip C. Hawkins, Best, Sharp, Holden, Sheridan, Best & Sullivan, Tulsa, for respondents.

BRIGHTMIRE, Judge.

The claimant seeks review of a Workers' Compensation Court three-judge panel's order which she assails for having estab-

lished the period of her temporary total disability without supporting competent evidence.

We modify the order and otherwise sustain it.

## I

The fifty-year-old claimant, Tandra Townsend, filed a Form 3 April 7, 1992, alleging that on February 29, 1992, she injured her "neck, upper and lower back" when she "passed out after being exposed to fumes" while working as a cashier during the grand opening of a new outlet for employer Dollar General Store.

On July 27, 1992, the employer filed its Form 10 denying that the claimant had sustained an accidental injury in the course of her employment or that she suffered any temporary or permanent disability.

A hearing on the claimant's request for temporary total disability benefits and continuing medical treatment was held September 28, 1992. The claimant testified that she possesses a "chemical sensitivity ... to some petroleum products and a headache is the reaction for the most part." So severe is her sensitivity that she had to give up an administrative position with a retirement center when her employer undertook a remodeling project because, she says, she "began to have reactions to the glue and the paint."

On October 19, 1992, the claimant went to work for the employer to help with the grand opening of a new store. She "started out moving boxes and stocking shelves." The people who helped with the opening were told they could expect to stay on if they did their work well. And after her grand opening duties ended, the claimant said she was "told that it was very possible that I would be working in the office part-time."

Then came Saturday, February 29, the grand opening day. The claimant said she stocked shelves for the first hour and the rest of the day she cashiered. Next to her cash register was a display of "scented candles." The claimant said the scent and aroma were quite heavy; the store was hot; the air conditioning was not running; no fresh air was circulating; and a lot of people were drawn to the grand opening. After cashiering in this environment for three and a quarter hours, the claimant developed a severe headache. During her lunch break she said she felt better after taking some aspirins and an antihistamine and inhaling some fresh air.

After the lunch break the claimant asked her supervisor to move her away from the aromatic candles to another register. The request was denied. A short time later a bad headache recurred. The claimant again complained to her supervisor and within thirty minutes was moved to another register. The headache continued, however, and because she was feeling no better the claimant requested a break. She was told that if she was feeling that bad maybe she "needed to just go on home and to go clock out." The claimant then "left the register, went about three or four yards and in the middle of the aisle just passed out on the concrete floor."

When she came to, the claimant saw people standing over her and her supervisor was saying, "you can't get up, you can't get up." They applied a wet washcloth to the claimant's head and later assisted her to the store manager's car. She was then taken to the Cleveland Hospital Emergency Room where "a blood count, coordination tests and [an] EKG" were carried out. She was given "Tylenol with Codeine to take ... for the headaches" and released.

The claimant returned to work Monday, her next scheduled work day, although, she said, the pain in "my head, my back, my shoulders, my hip, my leg, everything" was "quite significant." She worked all day without incident. That evening, however, the pain in her arms and neck had increased and she had "a really, really hard time sleeping."

Tuesday morning the claimant called three different chiropractors and scheduled

an appointment with the third one[1] for 6 p.m. that day, after she got off work. She went on to work but worked with pain. Around 4 p.m. she said the store manager asked her to clock out and told her she "wouldn't be needed any longer."

The claimant started chiropractic treatment three times a week consisting of "ultrasound and heat packs for the pain, [and] manipulation of the upper and lower back." In order to draw unemployment compensation she represented that she was able to go to work though she said she "didn't much feel like it but I needed the money." She drew unemployment from March through mid-July.

On July 13, 1992, an MRI (Magnetic Resonance Imagery) was performed on the claimant which revealed "disk herniation" at the "C5–6 and C6–7" level "with right sided compression and flattening of the spinal cord." Around September 1 she began receiving physical therapy two to three times a week for her neck and shoulder and upper back. At the September 28, 1992, hearing she testified that the right side of her head, neck, side and back hurt, and that she had muscle spasms through the upper back and shoulders. The claimant's attorney told the court, however, that the claimant was "not interested in the low back or anything [other than] the neck and problems from the neck."

The store manager who witnessed the claimant's fall said he saw her "kind of wobble back and forth like she was a little bit dizzy and she reached out and grabbed the table and just kind of sat down next to this table and then after she got sat down then she just leaned over." He said she did not "strike anything on the way down" and that on the way to the hospital "she said she had been feeling bad the night before and we talked about it being the flu or something like that."

Both parties presented medical evidence and, on October 9, 1992, the trial judge issued his order finding that the claimant had sustained a work-related injury to the neck, and had been temporarily totally disabled since July 18, 1992. He awarded benefits from the date the claimant's unemployment benefits ended—July 18—"not to exceed 150 weeks."

The employer appealed to a three-judge panel. It found that the trial court's order should be sustained except for the finding of the 150-week TTD period which the panel found to be excessive, against the clear weight of the evidence, and contrary to law. The panel therefore modified the order by ending the TTD period on August 28, 1992.

The claimant seeks review.

## II

■ Her first proposition attacks the three-judge panel's modification on the ground that the trial court's TTD findings "were not lacking in the required evidentiary foundation."

The argument is this: "Because it is limited by the clear weight of the evidence standard, a panel may reverse or modify the trial court's finding *only* after these findings [*sic*] have been determined to be lacking in the required evidentiary foundation."[2] Cited for this convoluted circuitry is *Parks v. Norman Municipal Hospital*, 684 P.2d 548 (Okl.1984). If the claimant is saying that *Parks* required the panel to find that the trial court's finding concerning the terminal date of TTD payments was against the clear weight of the evidence and that the panel failed to make such a predicatory finding, she has obviously overlooked the panel's order. In the second paragraph the panel found that "parts of said order [of the trial court] were contrary to law AND against the clear weight of the evidence." And the "part" the order refers to is obviously the termination date of the TTD award because that is the only thing the panel modified.

The claimant concludes her argument by discussing in some detail evidence which

---

1. This is the same chiropractor who had given the claimant some "upper back and lower back" adjustments in December 1991.

2. Emphasis not ours.

she says demonstrates that the trial court's findings "were based on the required evidentiary foundation," *i.e.*, they satisfied the weight of the evidence standard, and by reason of this she asks us to vacate the panel's order.

The short answer to this request is that since the claimant relies on *Parks* for supporting authority, she should be aware that the high court is committed to the rule that appellate review of a panel's order is limited to determining whether or not it is supported by competent evidence.

And here we find that its order is supported by competent evidence.

The employer presented a report and supplemental report prepared by its medical expert which stated that he had examined the claimant on August 16, 1992, and opined that she was not totally disabled on that date. When the reports were offered into evidence, the claimant made the following objection:

> "Judge, I'm going to waive the Rule 20 requirements since it has been within 20 days prior to trial. I'm going to object on the grounds of competency. The doctor's history, if anybody's history is incorrect, his history is incorrect. I'm going to object on the basis of competency."

The evidence was admitted over the objection.

**3.** Workers' Compensation Court Rule 20(F), 85 O.S.1991 ch. 4, app., which became effective November 1, 1990, reads:

> "Within ten (10) days of receiving a copy of the other party's verified or declared medical report, the party-recipient may file a written objection to the hearsay nature of the report and demand cross-examination of the physician, and shall serve a copy of such objection and demand on all parties and counsel of record in the case. Unless the demand is made as set out herein, the party-recipient shall be deemed to have waived any hearsay objection to the medical report. When the objection and demand is timely filed, the party intending to offer the medical report into evidence shall, within a reasonable time, arrange for the taking of the physician's deposition. All other specific objections to the competency, relevancy and probative value of the medical report shall be raised at the time of trial or shall be waived."

 The trouble with the claimant's objection to the employer's medical reports is that objecting counsel waived his right to a competency challenge by failing to file a written objection and a demand for a deposition as required by Rule 20.[3] That rule is designed to protect the right to depose and cross-examine the reporting doctor if there is concern about a report's admissibility on hearsay or other grounds.[4] So, unless such a competency objection is timely filed, the report will be admitted into evidence as part of the proof in the case.[5] And thus, the effect of the claimant's waiver of the Rule 20 requirements was tantamount to waiving her right to challenge the competency of her adversary's medical report at trial.

 Here, of course, even if the claimant had made a timely objection to the competency of the reports, it would have been futile unless the objection was based on something more than an incorrect or inadequate history. This is because an inadequate or incorrect history does not render a medical report incompetent, that is, inadmissible, although it could be the basis for an attack on a report's probative value.[6] In other words, objections to a written medical report which question its legal sufficiency to establish the facts for which it is offered are attacks on the report's probative value as distinguished from its admis-

**4.** *Whitener v. South Central Solid Waste Authority*, 773 P.2d 1248 (Okl.1989) (note 1). Rule 20, of course, also affords the offeror of a medical report protection against the possibility of being surprised by a trial time objection to competency.

**5.** *Whitener*, 773 P.2d at 1250.

**6.** *Lacy v. Schlumberger Well Service*, 839 P.2d 157 (Okl.1992) (footnote omitted), holding that under the *Parks* test, "when appellate review is premised on a probative value objection, an appellate court can hold that the trial court's order is not supported by any competent evidence ... because the supporting evidence lacks probative value. Thus, the term 'competency' ... refers to the evidence's legal admissibility, while the term 'competent' as used in the *Parks* test refers to the legal sufficiency, on any ground of evidence which supports an order of the Workers' Compensation Court."

sibility. Moreover, since April 3, 1990, probative value objections must be stated with "specificity," *i.e.*, an appellate court will not review a trial court's ruling on a probative value objection based, for example, on an inadequate history of chemical exposure, unless a "substantially identical request" was made in the trial court.[7]

Thus it is clear that the claimant's first proposition founders for several reasons. One, she waived her right to challenge the competency of the employer's medical report by failing to comply with Rule 20. Two, she waived her right to attack the report's probative value by failing to make a specific objection of this nature in the trial court. And, three, the claimant does not direct our attention to any shortcoming or inaccuracy in the employer's medical evidence. Instead, the sole goal of her argument is to convince us of how persuasive and weighty *her evidence is.*

Under these circumstances we are without a legal basis for vacating the three-judge panel's order.

We do notice, though, what appears to be a scrivener's error in the panel's order with respect to the date of terminating the TTD, namely August *28*, 1992. The correct date is August *26* because it was on this date that the employer's expert conducted his physical examination of the claimant and concluded that she was not totally disabled *at that time.* Since the panel based its TTD award on that evidence—and there exists no other basis for extending the award beyond that date—we conclude that two day add-on was the result of a scrivener's error.

The panel's order is therefore modified to correct the error and establish the ending date of the claimant's temporary total disability award to be August 26, 1992.

## III

 The claimant's other complaint is that the three-judge panel reversibly erred "in considering that [the claimant] applied for unemployment compensation."

The argument is that the application for and receipt of unemployment benefits "*did not* indicate that she could work; [but] that she was desperate for money that she needed for food and other essentials."

The employer, on the other hand, insists that subject *order be sustained presumably* because the claimant, by applying for and receiving unemployment benefits, "admitted that she was able to work;"[8] and therefore she is not entitled to TTD benefits based on her *inability* to work.

Generally, temporary total disability benefits are paid to an injured worker based on his inability to earn wages during the healing period and a disability cannot be classified as "total" under the Workers' Compensation Act "where the earning power of the employee is not wholly destroyed."[9] The claimant's receipt of unemployment compensation in lieu of wages would, therefore, seem to distinguish her situation, by definition, from a temporarily totally disabled worker entitled to workers' compensation benefits.

 There is, however, a recognized exception with respect to representations concerning one's ability to work, if made for the purpose of obtaining unemployment benefits. Such representations do not estop the injured worker from later taking a contrary position in a judicial proceeding against his employer "*who was a stranger to the first proceeding.*"[10] The inconsistent statements are, nevertheless, admissible as "quasi admissions" against interest.[11] Thus while the receipt of unemployment benefits before July 18, 1992, would impact the claimant's *credibility* in her quest for TTD benefits, it would not *ipso*

**7.** *Gaines v. Sun Refinery and Marketing,* 790 P.2d 1073, 1080 (Okl.1990).

**8.** *See* 40 O.S.1991 § 2–203.

**9.** *McClure v. Special Indemnity Fund,* 475 P.2d 811 (Okl.1970).

**10.** *St. Louis–S.F. Ry. v. Nessmith,* 435 P.2d 602, 606 (Okl.1967).

**11.** *Id.* at 607.

*facto* preclude her *right* to seek workers'· compensation benefits for that period of time.[12]

Here, the TTD award of both tribunals commenced on the date the claimant's unemployment benefits ended. The record does not show that the claimant objected to such starting date at either the trial or appellate panel level. Indeed, the claimant's attorney stipulated to the commencement date in the trial court saying:

"... under advise [*sic*] my client drew unemployment for a period of time for financial reasons and the last check which was paid for unemployment was July the 18th, 1992, so *we would not be seeking a period of temporary during that period of time,* Your Honor." [13]

The trial court entered its order based upon that self-imposed limitation, and it was affirmed by the three-judge panel. There is nothing in the record to indicate that the unemployment benefits received by the claimant had anything to do with the award of either court.

We therefore find the proposition of error to be without merit.

## IV

The order appealed is modified to the extent of changing the terminal date of the TTD to August 26, 1992, and is in all other respects sustained.

Order Sustained.

TAYLOR, P.J., concurs.

STUBBLEFIELD, J., concurs in result.

---

12. The disposition we make of the claimant's second proposition of error makes it unnecessary to determine whether the employer's contributions to the Unemployment Compensation Fund would provide it with the necessary standing as "an adversary" or one in privity with an adversary to invoke the estoppel doctrine in this action. *St. Louis–S.F. Ry. v. Nessmith,* 435 P.2d at 606. We likewise offer no opinion as to the claimant's potential liability for her failure to disclose to the Unemployment Commission her application for or receipt of workers' compensation benefits as required by 40 O.S.1991 § 2–203. Of course, a "proceeding is instituted before the [Workers' Compensation Court] by the filing of a claim for compensation therein." *Rucks–Brandt Construction Co. v. Price,* 165 Okl. 178, 23 P.2d 690 (1933), *cert. denied* 291 U.S. 679, 54 S.Ct. 526, 78 L.Ed. 1067 (1934).

13. Emphasis added.